## FLACCOMIO *v.* MAYOR & CITY COUNCIL OF BALTIMORE

[No. 67, October Term, 1949.]

*Decided January 12, 1950.*

The cause was argued before MARBURY, C. J., and COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Louis R. Milio* and *Hyman Ginsberg* with whom were *Ginsberg & Ginsberg,* on the brief, for appellant.

*Hamilton O'Dunne, Assistant City Solicitor for Baltimore City* with whom were *Thomas N. Biddison, City Solicitor* and *Thomas M. Jacobs* and *Hugo A. Ricciuti, Assistant City Solicitors for Baltimore City,* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

The City of Baltimore passed ordinance No. 65 on the 27th day of October, 1947, by which it authorized the acquisition by purchase or condemnation of certain property on the northwest side of Pratt Street, for addition to the Star Spangled Banner Flag House. The ordinance on appropriations for the year 1947, under the heading of "Miscellaneous", contained an item "Flag House, $65,000". The testimony shows that this money was for the purpose of purchasing this property and making improvements on it. The Flag House is located at 844 East Pratt Street and is the place where Mary Pickersgill made, or started to make, the flag which flew over Fort McHenry during the bombardment by the British in 1814. This was the flag which, when seen at dawn on the morning following the attack, inspired Francis Scott Key to write the Star Spangled Banner. This Flag House is now a museum, and is currently operated by the Star Spangled Banner Flag House Association, a private patriotic corporation.

The ordinance provided for the acquisition of the land in the square bounded by Granby Street, Albermarle

Street, Pratt Street, and Slemmers Alley. The intention was to make this whole tract, which is the block in which the Flag House is situated, a symbolic park or memorial. The appellant owned the property, 842 East Pratt Street, which is next door to the Flag House, and since the City authorities were unable to agree with her on the purchase price, condemnation proceedings were instituted in the Superior Court of Baltimore City. As a result of these proceedings, the City condemned the property and the appellant was awarded $6342 as owner of the property, and a certain James Tangiris, who was a tenant, was awarded $1829. Tangiris did not appeal, but the appellant did. She raises three questions, the first being that the property was not taken for a public purpose; the second, even if the City did have power of eminent domain, it was not exercised as required by the City Charter; and third, the tenant should not have been allowed anything, because his lease terminated when eminent domain proceedings were instituted.

On the first question, there have been a number of cases in this State determining whether the right of eminent domain can or cannot be exercised for certain specific purposes. In the case of *Marchant v. City of Baltimore,* 146 Md. 513, 126 A. 884, 887, property was being condemned for the development and improvement of the harbor, the acquisition of sites and the construction of wharves, docks, piers and warehouses, and some of these properties were to be leased by the City. It was contended that this constituted the taking of private property for private uses, but the Court said "The public character of the use to which the harbor structures are devoted is not affected by the fact that they may not all be made available for the indiscriminate use of the public. By the allocation or lease of certain docks for the separate use of persons or corporations having a regular or continuous need of such conveniences, the city does not convert into a private use the public port service which is thus in part provided." In the case of *Finan v. City of Cumberland,* 154 Md. 563, 141 A. 269, 270,

the question was the validity of an issue of bonds by the City of Cumberland, the proceeds of which were to be given to a private corporation which conducted a general hospital in the City. It was not a condemnation case, but the point was made that the Legislature could not validly give the power to the City to give public funds to a private corporation. This Court, speaking through Chief Judge Bond, held that the appropriation would be valid, and said "what is a public purpose for which public funds may be expended is not a matter of exact definition; it is almost entirely a matter of general acceptation." In the case of *Johnson v. Mayor and City Council of Baltimore*, 158 Md. 93, 148 A. 209, 213, 66 A. L. R. 1488, the City condemned property for the use of the Enoch Pratt Free Library, which was a private corporation. The Court held that this was a public purpose, and the City was authorized to condemn, saying "At the present time it is generally recognized and conceded by all thoughtful people that such institutions form an integral part of a system of free public education and are among its most efficient and valuable adjuncts. An enlightened and educated public has come to be regarded as the surest safeguard for the maintenance and advancement of the progress of civilized nations. More particularly is this true in republican forms of government, wherein all citizens have a voice. It is also true that education of the people ought not to and does not stop upon their leaving school, but must be kept abreast of the times by almost constant reading and study. It would therefore seem that no more important duty or higher purpose is incumbent upon a state or municipality than to provide free public libraries for the benefit of its inhabitants." In the case of *Riden v. Philadelphia B. & W. R.R. Co.*, 182 Md. 336, 35 A. 2d 99, this Court, discussed the power of eminent domain, the prohibition against taking property for private use, and the definition of what is a public use, reiterated the Maryland rule that "public use" means use by the public, and said that the determination of whether, in a particular instance,

the taking is for public use is a judicial question. A late case in which the general subject is discussed is *Perellis v. Mayor and City Council of Baltimore,* 190 Md. 86, 57 A. 2d 341. In that case we held the attempted street-closing was for a private use.

In the well-known case of *U. S. v. Gettysburg Electric Railroad Company,* 160 U. S. 668, 16 S. Ct. 427, 430, 40 L. Ed. 576, the Government was condemning property in the vicinity of Gettysburg, Pennsylvania, to preserve the lines of the battle of Gettysburg, to keep the battle field as an historical site. The Court said "Such a use seems necessarily not only a public use, but one so closely connected with the welfare of the republic itself as to be within the powers granted congress by the constitution for the purpose of protecting and preserving the whole country. It would be a great object lesson to all who looked upon the land thus cared for, and it would show a proper recognition of the great things that were done there on those momentous days." The purpose for which the City of Baltimore is attempting to acquire the small tract of land involved in this case is similar in many respects to the purpose which actuated the Government of the United States to acquire the battle field of Gettysburg. No battle was fought on this spot, but in the days of 1814, when Baltimore was expecting momentarily an attack which might destroy the city, considered by the British as one of the main bases from which privateers preyed upon their commerce, the citizens rallied to the defense, and here was commenced the making of the flag which caused the writing of our National Anthem. To make a symbolic memorial of the ground is a fitting way to impress upon the present and future citizens of Baltimore the connection of the city with the flag and its anthem. The title to the land will be taken in the name of the city and whether the property is operated by a private patriotic association or not, does not affect the use, which is public, and can be of great educational value and inspiration. We have no hesita-

tion in holding that the purpose of the condemnation is for a public use.

Appellant also raises the technical question that the City has not properly exercised its powers of condemnation, because the ordinance was not referred, before passage, to the Department of Public Works. The power of condemnation is found in Section 6, sub-section (2) of the Baltimore City Charter.█ This section provides in part as follows: "The Mayor and City Council of Baltimore shall have * * * power by Ordinance, * * * to acquire by purchase or condemnation any property, or interest therein, of any kind for any public purpose, * * * and to acquire property adjoining or near to property to be used for any public purpose. * * *." Section 24 of the Charter provides for the submission of ordinances for public improvements to the Director of Public Works, but this provision excepts those public improvements "included in the Ordinance of Estimates." This particular improvement was included in the Ordinance of Estimates by the $65,000 item we have already referred to. It is true that item does not go into details, but it is obvious from the testimony that this was the purpose for which it was intended. It is also suggested that Section 67 requires that all plans and specifications for public improvements shall be submitted to the Director of Public Works, who has supervision of all matters connected with them. But that section does not state that an ordinance for condemnation of property shall be submitted to him. The ordinance in question was submitted to the Commission on City Plan and the Department of Planning and approved by both of them. We are unable to find any basic defect in the proceedings leading to the condemnation.

Thirdly, the appellant objects to the instructions given by the Court to the jury as to damages to be awarded the tenant, Tangiris, and the instruction given by the Court concerning the tenancy of the latter. No excep-

282

tion was taken by the appellant to these instructions at the time they were given, although there were some exceptions taken by the tenant. The latter, however, did not appeal, and the appellant cannot now take advantage of the exceptions of the tenant when she did not take any of her own. None of these questions with respect to the tenant's rights are properly before us, and we cannot pass upon them.

For the reasons above stated the judgment will be affirmed.

*Judgment affirmed with costs.*