494 P.2d 52

Maria CORDOVA and Raul Navarette
Cordova, Appellants,

v.

CITY OF TUCSON, a municipal corporation,
Appellee.

No. 2 CA–CIV 1108.

Court of Appeals of Arizona,
Division 2.

Feb. 29, 1972.

Rehearing Denied March 28, 1972.

Review Denied April 25, 1972.

See also 15 Ariz.App. 469, 489 P.2d 727.

Murphy, Vinson & Hazlett, by Eric D. Johnson, Tucson, for appellants.

Herbert E. Williams, Tucson City Atty., by Miller, Pitt & Feldman, P. C., James C. Carruth, Special Counsel, Tucson, for appellee.

HOWARD, Judge.

This appeal involves two condemnation actions which were consolidated in the trial court. Appellee, the plaintiff below, moved for summary judgment on the issue of the right to condemn. This issue was decided in appellee's favor and the case was tried on the issue of damages only, resulting in a judgment for a total sum of $135,250.

Appellants assert that the city does not have the right to condemn their property since the improvements on the land are of great historical value. The record before us does not disclose to us the exact nature of this historical value.

Pursuant to A.R.S. § 36–1471, et seq., the City of Tucson adopted a resolution on or about the 3rd day of April, 1967, which resolved that a slum or blighted area exists within the City of Tucson and that the redevelopment of such area is necessary in the interests of the public health, safety, morals and welfare of the residents of the

**448**

City of Tucson. The resolution authorized and ordered the condemnation of the property within the area necessary for the completion of the Pueblo Center Redevelopment Project No. Arizona R–8. The appellants' properties are situated within said area. The appellee agrees that the property in question has great historic value, and has admitted that the property in question will be preserved in its present condition and that title to said property will be retained in the City of Tucson. The intention of the City of Tucson is to lease the property to the Tucson Art Center, which, in turn, has resolved to maintain and preserve appellants' properties.

Appellants assert that their contention that the use is not a "public use" is substantiated by the following: (1) The City has admitted that their property is not "slum property", (2) their property is not going to be torn down, (3) the property is going to be leased to a private corporation and (4) the one block where their property is located is the only area in the slum program which is north of the City Hall and has not been treated in the same fashion—complete razing—as was done with all of the land in the urban renewal area south of City Hall.

■ The exercise by a condemning authority of its power of eminent domain is conditional upon the proposed use being a "public use." Ariz.Const. art. 2, § 17; Oury v. Goodwin, 3 Ariz. 255, 26 P. 376 (1891). Whether the contemplated use is a "public use" is a judicial question to be determined without regard to any legislative assertion that the use is public. Ariz.Const. art. 2, § 17, A.R.S.

A.R.S. § 36–1471, subsec. 18, defines "slum area" as follows:

" 'Slum area' means an area in which a majority of the structures are residential, or an area in which there is a predominance of buildings or improvements, whether residential or nonresidential, and which, by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sani-

tation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency or crime, and is detrimental to the public health, safety, morals and welfare."

■ Appellants' contention that the City has admitted that their property is not "slum property" is not supported by the record unless appellants mean that the fact that the City is not razing their property constitutes an admission that it is not "slum property." In any event the vital question is not whether appellants' property is "slum property" but rather, is their property in a "slum area" as defined by A.R.S. § 36–1471, subsec. 18? This issue was decided by the court adversely to appellants. The transcript of the proceedings in the trial court was not made a part of the appellate record nor is there anything in the record which indicates that their property was not in a "slum area." The statutory authority for slum clearance permits and encourages community redevelopment programs. Such programs need not be on a piecemeal basis—lot by lot—building by building. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Miller v. City of Tacoma, 61 Wash.2d 374, 378 P.2d 464 (1963); Velishka v. City of Nashua, 99 N.H. 161, 106 A.2d 571 (1954). *See also* authorities collected in Annot., 44 A.L.R.2d 1414, at 1439 (1955).

As for the contention that the area north of City Hall was not being completely razed as was the area south of City Hall, we find that the record does not support such a factual premise, and even if it were true, condemning authorities are to be praised, rather than damned, for excepting from the bulldozer's path buildings and sites of historic and cultural significance.

■ Appellants have cited to us no authority to support their contention that historic sites are exempt from the power of eminent domain. On the contrary, it has

long been established that a taking to preserve historic property represents a proper "public use." United States v. Gettysburg Elec. Ry., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576 (1896), (site of the Civil War battle of Gettysburg); Flaccomio v. Mayor & City Council of Baltimore, 194 Md. 275, 71 A.2d 12 (1950), (house where the flagmaker had made or started to make the flag which flew over Ft. McHenry during bombardment by the British, and which inspired the Star Spangled Banner); 2A Nichols, Eminent Domain, § 7.519 (rev. 3d ed. 1970).

 We do not agree with the contention that there cannot be a taking for a "public use" if the property is to be leased thereafter to a private corporation or individual. A.R.S. § 36–1480, subsec. A provides in part:

> "A municipality may sell, lease, exchange or otherwise transfer real property or any interest therein in a redevelopment project area to any redeveloper for residential, recreational, commercial, industrial or other uses or for public use in accordance with the redevelopment plan, subject to such covenants, conditions and restrictions as it deems to be in the public interest or to carry out the purposes of this article, but such sale, lease, exchange or other transfer, and any agreement relating thereto, may be made only after, or subject to, the approval of the redevelopment plan by the local governing body. Such real property shall be sold, leased or transferred at its fair value for uses in accordance with the redevelopment plan even though such fair value may be less than the cost of acquiring and preparing the property for redevelopment. . . ."

As part of the redevelopment plan the subject property is to be integrated with other properties located in the same block into an "Art Center Complex" which will include an art center, historic buildings and gardens. Appellee has, so far, complied with the foregoing statute. The mere fact that the property will be leased to a private corporation or individual does not invalidate the condemnation. The real test is whether the land is to be used for the purposes for which it is condemned, which must be a public use. City of Phoenix v. Phoenix Civic Auditorium & Convention Center Ass'n, 99 Ariz. 270, 408 P.2d 818 (1965). We believe the appellee has met this test.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.