**PARKING SYSTEMS, INC., et al.,**
**Appellants,**

v.

**KANSAS CITY DOWNTOWN REDEVELOPMENT CORPORATION, et al.,**
**Respondents.**

**No. 57640.**

Supreme Court of Missouri,
Division No. 2.

Dec. 16, 1974.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 22, 1975.

Alan K. Benjamin, Bagby, Benjamin & Arnold, Kansas City, for respondent Kansas City Downtown Redevelopment Corp.

Aaron A. Wilson, City Counselor, Richard N. Ward, Associate City Counselor, Kansas City, for respondent Kansas City, Missouri.

Sheffrey, Ryder, Skeer, Krigel & Rose by Leonard Rose, Kansas City, for appellants Parking Systems, Inc., Mutual Auto Parks, Inc., Harry A. Rubin, Lavetta Rubin, Marsha Rubin, Robert D. Rubin, Main Street Investment Company, Inc. and Meldon L. Glenn.

Allan J. Fanning, Kansas City, for appellant Mary Tyler.

Morrison, Hecker, Cozad, Morrison & Curtis by Martin J. Purcell, Kansas City, for appellants Carl Bilicke, Joan De Ronlet Rageneau, Nancy Ann Schmoele Schmitz, Albert Clay Bilicke, Lucienne Bilicke, Mary Margaret Carpenter and Lewis M. Brodnax.

Morris, King, Stamper & Bold by J. Harlan Stamper, Kansas City, for George H. Weyer, Inc.

STOCKARD, Commissioner.

The Kansas City Downtown Redevelopment Corporation (hereafter referred to as "Redevelopment Corporation") was formed pursuant to and under the authority of Chapter 353 (all statutory references are to RSMo 1969, V.A.M.S.). On April 30, 1969, it filed an application, pursuant to Chapter 36 of the General Ordinances of Kansas City, for approval of a redevelopment plan, identified and referred to as the "Crosstown Center Plan." On March 26, 1970, the City Council of Kansas City enacted Committee Substitute Ordinance 37566 (hereafter referred to as "Ordinance 37566") approving Stages I and II of that application, and authorizing the City to enter into a contract with the Redevelopment Corporation to carry out the clearing, redevelopment, replanning and rehabilitation proposed in said Stages I and II.

In a report of the City Planning Commission to the City Council, Stages I and II were described in general terms as follows:

*First Stage.* A multi-story center with 600,000 to 800,000 square feet of floor space to be located in the block between 13th Street and Crosstown Freeway from Main Street to Grand Avenue. Multi-level garages for parking up to 5,000 cars to be provided on several levels under the retail center. Proposed start 1969–1970 with completion in 1979 and possibly as early as 1975.

*Second Stage.* An entertainment center containing theaters, restaurants, related recreation facilities and speciality shops. The development will be in the area west of Main Street from 13th Street to the Crosstown Freeway. Proposed starting date 1970. Completion 1975.

Two suits were filed in the Circuit Court of Jackson County, one with 15 plaintiffs and the other with five plaintiffs. The two suits were consolidated in the trial court. The prayer was that the court declare: (1) that Chapter 353 RSMo 1969, V.A.M.S., and more particularly §§ 353.130 and 353.140 thereof, and Chapter 35, revised Ordinances of Kansas City, and more particularly §§ 36.3, 36.23 and 36.24 thereof are contrary to the Constitution of Missouri and in violation of the Constitution of the United States; (2) that Ordinance 37566, (a) is contrary to the statutes and the Constitutions of Missouri and of the United States, (b) contrary to the public policy of this State, and (c) is invalid because in passing the ordinance the City Council acted capriciously and arbitrarily, and without sufficient evidence; and (3) that all are, therefore, null and void. Plaintiffs also prayed that the court declare that "the redevelopment area is not blighted," and that the Redevelopment Corporation did not submit the "financial proof required by Ordinance 36.7," and for that reason Ordinance 37566 and the contract between the City and the Redevelopment Corporation are void, and further, that the Redevelopment Corporation and the City be enjoined from proceeding with the redevelopment project. We note that this prayer for relief is substantially the same as that in the petition in Annbar Associates v. West Side Redevelopment Corporation, 397 S.W.2d 635 (Mo. banc 1965), but that appellants assert that "None of the issues raised in [this] case were ruled in the Annbar case."

The case was submitted on the pleadings, a stipulation of facts with numerous exhibits, oral testimony, and exhibits consisting of depositions and some documentary evidence. The trial court entered detailed findings of fact and conclusions of law, and entered judgment for defendants. Plaintiffs have appealed. We affirm.

In Annbar Associates v. West Side Redevelopment Corporation, 397 S.W.2d 635 (Mo. banc 1965), it was held that Chapter 353 was constitutional. In the opinion in that case this court set forth a detailed statement of the changes in conditions which brought about the need for "The Urban Redevelopment Corporations Law," which is Chapter 353.

Appellants' first point is that the trial court erred "in failing to find that the legislative determination in * * * Ordinance 37566 that the area of the redevelopment project was blighted was not supported by any evidence and/or was arbitrary and unreasonable in view of the facts that:

(a) Forty-nine percent of the property is open land, already cleared.

(b) Approximately 47% of the property is currently used as surface parking lots.

(c) No further clearance or development is required as to said 49% open land by the redevelopment Contract.

(d) Only approximately 28% of the buildings in the project area are deteriorated or substandard to a degree requiring clearance * * * and only approximately 14% of the entire area is occupied by such buildings.

(e) The structural deficiencies * * * are insufficient to qualify the project as blighted under the City's guidelines for determining blight."

Appellants further assert that "such arbitrary and unreasonable determination of blight cannot be the basis for condemnation * * * and any taking of property in the project area pursuant to the Ordinance and Contract * * * constitutes a taking of private property for private purposes * * *."

The term "blighted area" is defined in § 353.020(2) as "that portion of the city within which the legislative authority of such city determines that by reason of age, obsolescence, inadequate or outmoded design or physical deterioration, have become economic and social liabilities, and that such conditions are conducive to ill health, transmission of disease, crime or inability to pay reasonable taxes." The Code of Kansas City, § 36.4 adopts the same definition for blighted area, and § 36.51 thereof provides that any application for approval of a development plan must be supported by factual evidence of blight as follows:

(1) Evidence must relate to area generally.

(2) Evidence must relate to each specific property proposed to be acquired.

(3) Evidence must be sufficient to show that by reason of age, obsolescence, inadequate or outmoded design or physical deterioration, the properties involved are either economic or social liability; or are conducive to ill health, transmission of disease, crime or inability to pay reasonable taxes.

(4) The City Plan Commission shall analyze the evidence submitted and, to the extent necessary, conduct its own study in order to prepare a report to the City Council either confirming the conditions of blight or setting out such exceptions or modifications as may be appropriate.

(5) Evidence must be sufficiently complete that City Council can make finding of blight as required by state statute.

■ The first question is the scope of our review. Both parties apparently agree that in making its determination of fact that the area is blighted, the City Council acted in its legislative capacity. Judicial review is limited to whether the legislative determination was arbitrary or was induced by fraud, collusion or bad faith, or whether the City exceeded its powers. State ex rel. Dalton v. Land Clearance For Redevelopment Authority of Kansas City, Missouri et al., 364 Mo. 974, 270 S.W.2d 44 (banc 1954); Annbar Associates, Inc. v. West Side Redevelopment Coporation, supra, 397 S.W.2d at p. 650; Graham v. Houlihan, 147 Conn. 321, 160 A.2d 745 (1960). Appellants do not contend that the City Council acted fraudulently or in bad faith, and in view of the ruling in Annbar Associates v. West Side Redevelopment Corporation, supra, they cannot with justification contend that it exceeded its powers, except on the basis of acting arbitrarily. This leaves only the question of whether the City Council acted arbitrarily and unreasonably in its determination that the area was blighted.

Appellants contend that the five circumstances previously set forth establish an arbitrary and unreasonable determination. Before considering this contention, certain basic and established principles should be set forth.

■■ In order to have a blighted area it is not necessary that the total area, or any particular portion of it, constitute what is generally known as a slum. Levin v. Township Committee of Township of Bridgewater, New Jersey, 57 N.J. 506, 274 A.2d 1, (banc 1971); Cannata v. City of New York, 11 N.Y.2d 210, 227 N.Y.S.2d 903, 182 N.E.2d 395 (1962). Also, an area may properly be determined to be blighted even though it may contain some vacant land or structures which are not themselves offensive. Cordova v. Tucson, 16 Ariz.App. 447, 494 P.2d 52 (1972); Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 184 A. 2d 797 (1962).

Appellants have set forth in their point, and have then argued, that by reason of the facts there set forth, the City Council could not reasonably have determined that the area was blighted. Certain observations are appropriate. They contend in their subpoint (c) that 49% of the proper-

ty is open land and already cleared, and that the contract with the Redevelopment Corporation calls only for "clearance of blight." This is not our understanding of the contract. It provides that the redevelopment project shall include certain property, and that the Redevelopment Corportion shall demolish all presently existing buildings or improvements, with certain described exceptions. It then provides that the Redevelopment Corporation shall "subject to the prior satisfaction of all the applicable terms and conditions set forth in this contract * * * erect, or cause to be erected in the development area" a "retail center * * * consisting of five structures," and "an entertainment, hotel and motel center containing theaters, restaurants of various kinds, including international restaurants, related recreational facilities and specialty shops." We cannot reconcile the statement in appellants' argument that "no development of the area to be taken is required by the ordinance or contract—only 'clearance of blight.' "

One further comment is also appropriate. In subpoint (e) it is asserted that the facts shown by the structural survey are not sufficient to qualify the project area as blighted "under the city's guidelines for determining blight." In the argument reference is made to the "City's customary standard of 'blight.' " We find no reference to any such standard or guidelines. There is reference to a Federal standard for the determination of blight, but it is not binding on the City, and the evidence clearly shows that the Federal standard was not used except by way of comparison.

The essential issue presented by this point, even when we accept the assertions made by appellants in their five subpoints, is whether under those facts the ordinance adopted by the City approving Phases I and II of the proposal of Redevelopment Corporation is so unreasonable and arbitrary that a court should declare it void.

An ordinance of a municipality is presumed to be valid, Flora Realty & In-vestment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771 (banc 1952), but this is a rebuttable presumption, and while an ordinance may be valid in its general aspects, as to a particular state of facts involving a particular owner affected thereby, it may be so clearly arbitrary and unreasonable as to be unenforceable. Downing v. City of Joplin, 312 S.W.2d 81, 84 (Mo. 1958). The issue of reasonableness or arbitrariness must turn upon the particular facts of each case, Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483 (banc 1948), and the appellants, having challenged the validity of the ordinance as to them, have the burden of proving unreasonableness. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762 (banc 1950). However, in determining whether the appellants have met their burden, it must be kept in mind that the courts cannot interfere with a discretionary exercise of judgment in determining a condition of blight in a given area any more than they can interfere with a discretionary exercise of judgment in zoning property, and as it has repeatedly been said in zoning cases, "Unless it should appear that the conclusion of the City's legislative body in the respect in issue * * * is clearly arbitrary and unreasonable, we cannot substitute our opinion for that of the City's * * *. If the City's action * * * is reasonably doubtful or even fairly debatable" we cannot substitute our opinion for that of the City Council. Landau v. Levin, supra.

As previously noted, vacant land and land now used for parking lots may be included in an area that is to be declared to be blighted, and the fact that it is "already cleared" is not controlling. Clearing alone is not the ultimate use of the land, and the fact that "no further clearance" of some of the land is required is not a controlling factor. We must also disagree with appellants when they assert that "no further * * * development" is required of the land already cleared or being used as a parking lot. The contract obviously calls for further development. Also, without

evidence compelling a finding of unreasonableness, the fact alone that only a certain percentage of the buildings are "deteriorated" is not controlling. This calls for another observation. When appellants assert that only "approximately 28% of the buildings * * * are deteriorated," they refer to "Stipulation Ex. 3" as evidence thereof. We do not find that percentage therein set forth, and appellants do not set forth how they arrived at such figure. We find in Ex. 3 a "Statement of the existing buildings or improvements in the development area to be demolished immediately." The classification is as follows: "Good" —1; "Fair"—1; "Deteriorating"—10; "Deteriorated"—6. Under the title, "Housing Conditions," apparently referring to a prevous chart pertaining to "dwelling accommodations," the housing units are classified as follows: "Good"—none; "Fair"—8; "Deteriorating"—12; "Deteriorated"—30. Apparently it is appellants' contention that the classification of "deteriorating" could not be considered by the City Council.

In their subpoint (e) appellants contend that evidence of "structural deficiencies" alone did not constitute evidence of "blighting environmental factors." We do not agree. From that evidence the City Council reasonably could conclude that there existed "blighting environmental factors," assuming tht such a finding was a specific requirement.

■ The City Council made a legislative determination from all the evidence before it that the area was blighted, and as stated in Annbar v. West Side Redevelopment Corporation, supra, 397 S.W.2d at p. 650, "that determination, whether wise or unwise, cannot be affected by the courts unless it appears upon allegation and clear proof that the legislative determination was arbitrary or was induced by fraud, collusion or bad faith." We find no clear proof that would justify such a finding.

Appellants' second point is that the trial court erred "in failing to find" that Chapter 353 requires that the City Council, prior to approving any development plan, make a finding that the area within the development plan is blighted. They then assert that the City Council did not make such a determination of its own as to blight "but illegally delegated the responsibility to make such determination to the City Plan Commission and accepted its determination without any supporting analysis, * * * as conclusive."

It is provided in § 353.020(2) that " 'Blighted area' shall mean that portion of the city within which the legislative authority of such city determines" that certain specified conditions exist. Chapter 36 of the General Ordinances of Kansas City provides in § 36.4 thereof that " 'area' shall mean that portion of the city which the City Council has found or shall find to be blighted * * *." It is further provided in § 36.5.1 that an application for approval of a Development Plan must be supported by factual evidence of blight, and that, "The City Plan Commission shall analyze the evidence submitted and, to the extent necessary, conduct its own study in order to prepare a report to the City Council either confirming the conditions of blight or setting out such exceptions or modifications as may be appropriate," and that the "Evidence must be sufficiently complete that City Council can make finding of blight as required by state statute." In § 36.8 it is provided that "A Development Plan shall not be approved by the City Plan Commission until and unless the Commission shall determine" that the area is "blighted." Section 36.9 provides that "Any determination by the Commission as described in Section 36.8 shall be conclusive evidence of the facts so determined except upon proof of fraud or wilful misfeasance." Finally, in § 36.15 it is provided that "in any ordinance approving a Development Plan, the Council shall make the following findings and declarations: * * * (a) That the area included within a Development Plan is a blighted area * * *."

The above provision of § 36.8 is inconsistent with the other provisions which require the City Council to make a "finding of blight as required by state statute." However, appellants do not challenge any finding of fact made by the Commission; in fact, they rely on said findings. They disagree with the conclusions drawn from those findings. Also, a provision of the ordinance cannot be contrary to the requirement of the statute, and absent a showing to the contrary, we assume the statutory requirements were complied with.

Appellants' contention is that the City Council delegated its legislative function to the City Plan Commission. But, by this contention appellants overlook the fact that the City Council is acting in a legislative capacity, and that in this situation the City Plan Commission is acting comparable to a legislative committee. It is not customary that evidence be heard before the full membership of a legislative body, although it could hear evidence. Instead, legislative committees receive evidence, evaluate it, and report to the legislative body. Based on the committee report, and such other evidence the members desire to obtain, including the evidence before the committee, the legislative body makes its determination. There is nothing in the record from which it may be determined that the City Council did not make the determination in the manner required. We find no merit to this contention by appellants.

The third and fourth points may be considered together. The third is that the trial court erred "in failing to find" that Chapter 36 of the General Ordinances of Kansas City requires a determination by the City Council that "sufficient funds or securities are immediately available and will be used for normal financing of the entire development," and "in failing to find" that the determination by the City Council that such funds were immediately available was not supported by any evidence, or that such determination was arbitrary and unreasonable because, (a) The only entity to furnish funds was the Redevelopment Corporation, a "shell" corporation with a deficit; (b) The Redevelopment Corporation is excused from performance in the event it cannot obtain financing satisfactory to it; (c) No person or entity other than the Redevelopment Corporation was committed to furnish funds except Durwood, Inc. which was to furnish $434,000 for the cost of demolition; (d) The City relied on letters from banks addressed to Stanley Durwood, Durwood, Inc., indicating that the banks would make loans if "adequate collateral" was furnished, but the City made no investigation as to what constituted adequate collateral; (e) The only letter concerning availability of funds for construction of improvements was "from Fred Brady to Stanley Durwood, President of Durwood, Inc., indicating that many of their institutional investors would be interested in lending money," and the City "did not regard this as a commitment;" and (f) Durwood, Inc. was "not in a financial condition to furnish funds or collateral to finance the demolition and funds which, when added to the land in the project area, would be sufficient to borrow additional funds to finance even the cost of acquisition of the property in the project area." (It appears that some word or phrase is missing in this last contention).

Appellants' fourth point is that the trial court "failed to find" that inasmuch as the power of eminent domain is granted to a "shell" corporation which does not have the ability to perform because of the assertions set forth in Point III, the ordinance authorizing the exercise of eminent domain is in violation of due process and equal protection of the laws.

The contention in the third point is governed by the rules announced in ruling on the first point in appellants' brief. There appellants contended that the evidence of blight was insufficient to support the finding of the City Council, and for that reason the enactment of Ordinance 37566 was arbitrary and unreasonable. In

this point appellants contend that the evidence did not justify the finding by the City Council that "the proposed method of financing the development" was adequate, and that there was not sufficient evidence "satisfactory to the City Council" to support a finding that "sufficient funds or securities [were] immediately available" to finance the project. This is a legislative determination by the City Council, and as previously stated, the courts will not interfere with a discretionary exercise of judgment by the City Council unless it is clearly erroneous and unreasonable. Downing v. City of Joplin, supra, 312 S.W.2d at p. 84.

The Development Corporation was created pursuant to Chapter 353 for the sole purpose of managing and carrying out this project. The requirements of the ordinance concerning financing does not mean that the Redevelopment Corporation must have the required amount of money in the bank, or a sufficient amount of securities in hand. A somewhat related issue was considered in Annbar Associates v. West Side Redevelopment Corporation, supra, and at 397 S.W.2d l.c. 655, it was stated: "We need not set out the method of financing. It is sufficient to say that we will not substitute our judgment for that of the city as to how 'detailed' [the Redevelopment Corporation's] statement of financing is required to be. The city plan commission and the finance committee of the council, after public hearings, have approved the redevelopment plan as containing a statement of the method of financing in sufficient detail; and, there has been a legislative determination by the city council that the method and plan are sufficient. Absent allegations of fact and clear proof that approval of the plan was arbitrary or the result of fraud, collusion or bad faith, it will be accepted by the courts as sufficient; * * *." To demonstrate that the determination of the adequacy of the plan for financing was at least debatable, we shall set forth the following testimony:

Q. [Counsel for appellants] Do you remember what it was that persuaded you [that the financing was adequate]?

A. [Mr. Stubbs, a member of the Council]. It was a combination of all the evidence of financial capability that had been presented to us up to that time.

Q. Did the letters from banks play any part in your coming to that conclusion?

A. Letters from banks were a part of the financial data that was supplied and took part in it like everything else that was presented to me.

Q. Well, is it fair to say, * * * that without letters from banks or some indication from lending institutions you would not have been persuaded to approve the plan?

* * * * * *

A. The requirements that the Council made over and above the requirements of the statute were that we be satisfied that the applicant at least had the ability to acquire the land and clear the blight in question and that could have been, that information could have been supplied a number of different ways. I suppose if they had a pile of money on the table that would have satisfied me. In this case letters of commitments and other evidence was supplied that eventually was satisfactory.

Q. There never was any evidence submitted that they had the cash on hand, available to acquire the land and clear the blight?

A. No, I think not.

Q. So, in fairness when you get down to it, in this particular case, it was the letters from the banks, was it not that calmed any doubts that you had?

A. No, it was a combination of what was presented * * * which included letters from banks. It included appraisals of the relative value of the land and

the cost to clear the blight therefrom and it included what amounted to some live testimony at hearings before the Committee and eventually one hearing before the City Council and as I [said] in all honesty it was a combination of all those items that finally convinced me that this applicant did meet the test as required by the ordinance.

 Under the circumstances, the appellants have not met their burden of proof that the determination of the City Council as to the adequacy of financing was arbitrary and unreasonable. This results in there being no merit to appellants' fourth point, because it is conditioned on a meritorious third point.

Appellants' sixth point will be considered next out of order. They there contend that "the trial court erred in overruling their motion to produce appraisals furnished to the City as relevant evidence pertaining to financing of the redevelopment project because said appraisals were considered by the City in approving the project and constitute evidence relevant to the subject of matters of this action."

Reference is made to two pages in the transcript. There we find only the statement by counsel for appellants that a motion was filed "asking that certain appraisals of real estate that [Redevelopment Corporation] had made * * * be produced for inspection and copying," and that "those appraisals" were offered to the City Council for its consideration, presumably on the issue of adequate financing. By turning to the motion, we find that it was alleged therein that respondents be required to produce "Any and all appraisals of real estate prepared by or at the request of Stanley Durwood, Durwood, Inc., Kansas City Downtown Redevelopment Corporation or any subsidiary or affiliated corporation thereof * * * concerning the Crosstown Center Project."

 The trial court sustained respondents objection to this request to pro-

duce the appraisals on the ground that they constituted a work product. In their brief appellants cite no authority in support of their contention that the trial court erred in its ruling, and they make no attempt to demonstrate why the appraisals were not properly considered by the trial court to be a work product. Assuming that they would have been material to the issue of adequate financing, if they were in fact a work product, appellants were not entitled to them. This court should not be called upon, in effect, to become a partisan in this litigation on behalf of appellants and demonstrate that the trial court was in error. The burden to show error was on the appellants, and they have not met that burden.

The fifth and final point to be considered is rather lengthy, but to be certain that the full contention is presented, we shall set it forth substantially in its entirety, and we have numbered the contentions for subsequent reference. It is contended that the trial court erred (1) "in finding that [Ordinance 37566], prior to the clearance of the blight and completion of the redevelopment project, does not permit a sale or other disposition of the real property embraced within the redevelopment project free of the conditions and restrictions of [Ordinance 37566], the Development Plan or the Contract between Crosstown and City." It is further asserted that the trial court erred (2) "in failing to find" that the "contract between the City and [the Redevelopment Corporation] requires only that [the Redevelopment Corporation] acquire and clear the land in the project area." Then argumentatively it is asserted that (3) "at any time after clearance, the property may be sold, free and clear of all restrictions, without insuring development of the property and providing expressly that redevelopment need not necessarily occur." In a separate paragraph it is further asserted that the trial court erred (4) "in failing to find" that Ordinance 37566 and the contract made pursuant thereto "authorize the condemnation of

49% of the project area, which is open land, and requires no development of such property." It is then presented argumentatively that (5) "although clearance of blight is required" by the ordinance and contract, "said 49% of the project area is already cleared," and therefore, its condemnation "is in excess of that necessary for the public benefit of 'clearance of blight,' where as here, such clearance means only physical clearance and not redevelopment." It is then concluded that (6) "to the extent that [ordinance 37566] and the contract authorize the condemnation of open or cleared land" they violate the due process and equal protection clauses of the Constitution.

The substance of this contention, as we understand it, is that the Redevelopment Corporation is authorized and required to clear the area of blight, but is not required to develop it, and may sell all or parts of the area after clearing it, and therefore the condemnation of the land already cleared is not a taking for a public use.

We first note that § 353.170 provides that "Any city subject to this chapter [Chap. 353, the Urban Redevelopment Corporations Law] shall have power: * * * (3) To sell or lease such real property for use in accordance with the provisions of this chapter." In § 353.150, subd. 4 it is also provided that "Any urban redevelopment corporation may sell or otherwise dispose of any or all of the real property acquired by it for the purposes of a redevelopment project." Provision is then made for tax relief under certain conditions.

■ As to the contention we have numbered (1). We fail to see how appellants are entitled to complain, even if we assume they are factually correct in their contention. If and when the property is acquired by the Redevelopment Corporation, by voluntary sale or by the exercise of eminent domain, appellants will be paid for whatever land or property is acquired or taken. We will not assume that the Redevelopment Corporation will then act illegally, but if it purports to do so, those having a justiciable interest may then complain. See In Re Armory Site in Kansas City, 282 S.W.2d 464 at p. 469 (Mo.1955).

As to contentions (2) and (3). We previously quoted the provisions of the contract which call for development of the area after the blight has been removed, and again, we are not going to presuppose a wrongful act on the part of the Redevelopment Corporation or the City, and if a sale of part of the land after clearance is permitted, appellants are not now entitled to complain.

As to contention (4). Assuming that 49% of the project area is "open land," as appellants assert, that does not mean that development is not required. The total project calls for more than mere clearance of land and then paving it to convert it into a parking lot. Such a finding as proposed by appellants would have been erroneous.

■ As to contentions (5) and (6). Here appellants again proceed upon the erroneous theory that no development is required or contemplated as to land on which there is no existing building. All the land, whether now vacant or upon which there is now a structure, is a part of a plan for the redevelopment of an area, and it is as essential to acquire the land now vacant as it is to acquire the land upon which there is now a structure.

We find no merit to the contentions of appellants, and therefore the judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

All of the Judges concur.