Martin SCHWEIG, Jr., James J. Dwyer and George H. Schlapp, Plaintiffs-Appellants,

v.

CITY OF ST. LOUIS and Maryland Plaza Redevelopment Corporation, Defendants-Respondents.

No. 38564.

Missouri Court of Appeals, St. Louis District, Division Three.

May 16, 1978.

Motion for Rehearing and/or Transfer Denied July 14, 1978.

Application to Transfer Denied Sept. 12, 1978.

---

4. The judgment in favor of defendant in the rent and possession case was not appealed.

Kohn, Shands, Elbert, Gianoulakis & Gil-jum, John Gianoulakis, John A. Klobasa, St. Louis, for plaintiffs-appellants.

Bernard J. Mellman, Cordell Siegel, St. Louis, for Maryland Plaza.

Jack L. Koehr, City Counselor, Timothy G. Noble, Associate City Counselor, St. Louis, for City of St. Louis.

WEIER, Judge.

Plaintiffs filed suit for declaratory judgment to contest the validity and enjoin the enforcement of two ordinances of the City of St. Louis. One ordinance declared a certain area of the city "blighted" and the other approved a redevelopment plan for the area. These ordinances were passed pursuant to the "Urban Redevelopment Corporations Law," Chapter 353 RSMo. 1969. The trial court dismissed plaintiffs' second amended petition on the grounds that plaintiffs had no standing to challenge the ordinances and that the petition failed to state a claim upon which relief could be granted. Plaintiffs appeal from that decision.

"On a motion to dismiss for failure to state a claim for relief, we accept as true the facts properly pleaded, giving the averments a liberal construction, and making those reasonable inferences fairly deducible from the facts stated." *Concerned Parents v. Caruthersville School District 18,* 548 S.W.2d 554, 558[6] (Mo.banc 1977). "If the facts pleaded and reasonable inferences to be drawn therefrom, looked at most favorably from the plaintiff's standpoint, show any ground upon which relief can be granted, the plaintiff has a right to proceed." *Euge v. Golden,* 551 S.W.2d 928, 931[4] (Mo. App.1977). Guided by these principles, we consider whether the petition states a cause of action and whether the allegations show that plaintiffs have standing to raise the issues contained in their petition.

Plaintiffs' second amended petition alleges that on November 20, 1970, the Plan Commission of the City of St. Louis "made recommendations to the St. Louis Board of Aldermen for the redevelopment of certain areas within the City of St. Louis" including an 18.1 acre tract of land in the area around Maryland Plaza and Euclid Avenue in the City of St. Louis. A bill was introduced in the board of aldermen designating the entire area recommended by the plan commission for redevelopment as "blighted." Thereafter there was introduced a

substitute bill which declared this area, except for seven improved properties located at 21–65 Maryland Plaza, "blighted" and in need of redevelopment. This substitute bill was passed by the board of aldermen on April 6, 1971, and became Ordinance 55901. Plaintiffs do not challenge the validity of this ordinance.

On June 24, 1974, the board of aldermen passed Ordinance 56791. This ordinance declared "blighted" much of the area declared "blighted" in Ordinance 55901. It also included the previously excluded parcels at 21–65 Maryland Plaza. Plaintiffs' petition alleges that Ordinance 56791 is "void, invalid, arbitrary, unreasonable, capricious and unconstitutional" because: (1) the bill which became Ordinance 56791 was not accompanied by a determination from the plan commission that the area was blighted as required by Chapter 29 of the Revised Code of the City of St. Louis; (2) the seven improved properties which were declared blighted are not in fact blighted but "are well maintained properties in excellent condition with outstanding architectural and esthetic features" and the declaration of blight results in a deprivation of plaintiffs' properties without due process of law in violation of Article I, Section 10 of the Constitution of Missouri and the Fourteenth Amendment of the United States Constitution because plaintiffs' homes, which are nearby, "are substantially similar to those at 21–65 Maryland Plaza"; (3) the designation of the seven improved properties as blighted "substantially interferes with and has substantially reduced the value of said [plaintiffs'] properties because of the proximity of plaintiffs' properties to those at 21–65 Maryland Plaza and because of the similarity of the character, condition, and style of plaintiffs' properties to those declared blighted and thereby constitutes a taking of plaintiffs' properties without due process of law in violation of plaintiffs' rights as guaranteed by Article I, Section 10, Missouri Constitution of 1945,[1] and the

Fourteenth Amendment of the United States Constitution"; (4) the designation of the seven improved properties as blighted deprives plaintiffs of their properties without due process of law because "various proposed redevelopment plans would require substantial changes in parking and traffic patterns"; (5) the designation of the seven improved properties as blighted "is arbitrary and capricious in that its purpose is not to redevelop an area in fact blighted but is rather to give tax and other improper advantages to a private real estate developer or developers, which purpose is inconsistent with Chapter 29 of the Revised Code of the City of St. Louis and Chapter 353, Revised Statutes of Missouri, 1969, thereby damaging plaintiffs and others similarly situated by virtue of decreased tax revenues from the area declared blighted"; (6) the designation of the seven improved properties as blighted is arbitrary and capricious and constitutes "a taking of plaintiffs' properties without due process of law . . in that the purported blighting would substantially change and destroy the existing residential character of the surrounding neighborhood by substantially changing traffic patterns and flow, by increasing noise, by increasing lighting and by destroying the distinctive character of the residences at 21–65 Maryland Plaza . . ."; (7) this designation is arbitrary and capricious and constitutes a "taking of plaintiffs' properties without due process of law . . in that the homes at 21–65 Maryland Plaza are residential in nature by both zoning and use and there is presently an inadequate supply of such residential structures in the area declared blighted and the area surrounding the allegedly blighted area, whereas," there is a surplus of commercial property in this area and changing the use of the buildings at 21–65 Maryland Plaza from residential to commercial would be inconsistent with "A Housing Program For The City of St. Louis—1970—1980," developed by the plan commission; (8) Ordinance

---

**1.** Article I, Section 10 of the Missouri Constitution states: "That no person shall be deprived of life, liberty or property without due process of law." Article I, Section 26, not mentioned in the petition, states: "That private property shall not be taken or damaged for public use without just compensation."

56791 is invalid and void because "a primary purpose is to accomplish a rezoning" of the seven improved properties "without complying with the legal requirements for rezoning and in spite of the fact that six past efforts to rezone said Maryland Plaza area have failed and been defeated"; (9) Ordinance 56791 is invalid and void because it is inconsistent with a "Historic District Enabling Ordinance" and another ordinance creating the "Central West End Historic District"; and (10) the properties declared blighted are not in fact blighted in that it is not " 'impossible and uneconomical for individual owners to independently undertake to remedy such conditions' as required by Section 29.010, Revised Code of St. Louis, if such properties are in fact blighted, but, on the contrary, the individual owners of the purportedly blighted properties are persons or corporations of substantial means."

Plaintiffs' second amended petition further alleges that on March 18, 1975, the board of aldermen passed Ordinance 56933 which approved a redevelopment plan for the area declared blighted by Ordinance 56791. The redevelopment plan had been submitted by defendant Maryland Plaza Redevelopment Corporation, a corporation organized under Chapter 353 RSMo.1969. The petition alleges that this corporation is "proceeding with the implementation of said redevelopment plan and will continue to implement said plan resulting in irreparable harm to plaintiffs unless enjoined" by the circuit court. Plaintiffs' petition alleges that Ordinance 56933 is "void, invalid, arbitrary, unreasonable and capricious" because: (1) the plan fails to state which existing buildings are not to be demolished immediately as required by § 29.080(5) of the Revised Code of the City of St. Louis; (2) the plan fails to state the approximate number of families residing in the existing dwellings together with a schedule of rentals paid by them, and a schedule of vacancies in these buildings, together with rentals demanded for such vacancies as required by § 29.080(12) of the revised city code; (3) the plan fails to state a proposed plan for the relocation of families who will be displaced by the development project as re-

quired by § 29.080(13) of the revised city code; (4) the plan fails to state the character, type and quality of construction, approximate rentals and dates of availability of proposed dwelling accommodations to be offered during each stage of construction and upon completion of the project as required by § 29.080(14) of the revised city code; and (5) the plan fails to state any proposed method of financing the redevelopment as required by § 29.080(15) of the revised city code.

The petition also alleges that plaintiff Martin Schweig, Jr., owns real property at 4648 Maryland Plaza and that plaintiff George H. Schlapp owns property at 4639 Maryland Plaza and that "the west property lines of said plaintiffs' Schweig and Schlapp properties [are] immediately adjacent to the east line" of the tract declared "blighted" in Ordinance 56791. These properties are described to be in the "immediate neighborhood" of the seven improved properties at 21–65 Maryland Plaza. The petition also relates that plaintiff James J. Dwyer "owns property at 16 Lenox Place immediately north and east" of the area declared blighted in Ordinance 56791.

Both parties agree that the standing question presented here is one of first impression. In general, for a person to have standing to sue he must have "some actual and justiciable interest susceptible of protection in the suit." *In the Interest of D.M.H.*, 516 S.W.2d 785, 787[7] (Mo.App. 1974). Whether a person has a legally protectable interest so as to confer standing is a matter for ad hoc determination by the courts under the given circumstances. *Allen v. Coffel*, 488 S.W.2d 671, 675[5] (Mo. App.1972), 69 A.L.R.3d 794, citing *Stickelber v. Board of Zoning Adjustment*, 442 S.W.2d 134, 136[1] (Mo.App.1969). In zoning cases it is generally held that to have standing a person must show that he has a vested property interest that is or will be adversely affected by the existence or enforcement of a zoning restriction. One factor often considered in making this determination in these cases is the proximity of the plaintiff's property to the site in question.

*Allen v. Coffel, supra* at 675; *Stickelber v. Board of Zoning Adjustment, supra* at 137[3]. "And it is now well established that an adjoining, confronting or nearby property owner has standing, without further proof of special damage, to assert the invalidity of an ordinance or the right for review of an administrative decision affecting the property in question. [Citations omitted.]" *Allen v. Coffel, supra* at 675[5]. *See generally*, 3 Anderson, American Law of Zoning § 21.10, pp. 566–69. In *Allen v. Coffel, supra,* the court held that plaintiffs, who were not residents of the City of Peculiar, had standing to contest the validity of two Peculiar ordinances rezoning a tract of land in that city where plaintiffs' property was contiguous to the rezoned property.

Plaintiffs in the case at bar rely on *Allen v. Coffel, supra,* as well as *Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n,* 265 S.W.2d 374 (Mo.1954); *Dahman v. City of Ballwin,* 483 S.W.2d 605 (Mo.App. 1972); and *State ex rel. Housing Authority of St. Louis County v. Wind,* 337 S.W.2d 554 (Mo.App.1960) in support of their contention that they have standing to contest the validity of these urban renewal ordinances. In each of these cases the court held that plaintiffs had standing. In *Kellog, supra* at 375, plaintiffs owned and resided in property in the same block "contiguous to, or on the same side of, or across the street from the property of defendant, or in the adjoining block." In response to defendant's argument that plaintiffs lacked standing because they failed to prove their property would be less desirable or less valuable as a result of defendant's property being used for a home for convalescent and aged women in violation of a city zoning ordinance, the court at 376[1, 2] stated as follows:

"But we think it should not be held that a showing of depreciation of value or of any special pecuniary damage is essential to the maintenance of this action by plaintiffs or that depreciation of value of their property is the only special damage which the plaintiffs herein may suffer. It was shown in evidence that plaintiffs are owners and residents of property in a district zoned for use as 'single-family'

dwellings. Plaintiffs have an interest in the continuation and observance of the single-family dwelling classification of · the zoned district in which they reside and own property, and it would seem they should be entitled to resort to this equitable remedy to enjoin the violation of the zoning legislation and the regulations enacted and promulgated by the zoning authority in invoking the police power with whatever resultant benefit to them or their properties. In our opinion, they are proper party-plaintiffs and may maintain this action to prevent by injunction the violation of the zoning ordinance, by which violation their interest and benefit in some measure may be destroyed."

In *Dahman v. City of Ballwin, supra* at 609, the court in dicta stated that "the existence of a corporate boundary line should not deny an adjacent landowner outside the city standing to challenge the validity of a proposed zoning classification, a right granted to residents of the corporate entity." In *Wind, supra,* one of two intervenors-appellants owned property across the street and less than 100 feet from defendant's property for which allegedly illegal building permits had been issued. *See also, Howe v. City of St. Louis,* 512 S.W.2d 127, 130[1] (Mo.banc 1974) (no standing for plaintiffs challenging antiblockbusting ordinances where plaintiffs merely alleged that they owned real property in the city but did not allege that they owned property in the areas where the restrictions applied or that they would be adversely affected by the ordinances); *State ex rel. Algonquin Golf Club v. Lewis,* 395 S.W.2d 522, 523–25[2] (Mo.App.1965) (owners of property next door to and across the street from proposed parking lot had right to intervene in suit challenging board of adjustment's denial of permit to build parking lot).

Defendants argue that these zoning cases are inapplicable as precedent for standing in this case. In *Gibson & Perin Co. v. City of Cincinnati,* 480 F.2d 936, 941–45[1] (6th Cir.), *cert. denied,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973), relied on by defendants, plaintiffs, owners of property

across a street from an urban renewal project, brought suit challenging the location and design of a completed parking garage. The court held that plaintiffs lacked standing because the federal urban renewal statute did not provide for review of actions of agencies and private developers of urban renewal projects and because plaintiffs had no personal interest or stake in the project, the court noting, at 942, that "under no stretch of the imagination can it be claimed that plaintiffs, who were located outside the Urban Renewal area, were within the zone of interests protected by the statute."[2] This case was relied on in *Rodeway Inns of America, Inc. v. Frank*, 541 F.2d 759, 766–67[9, 10] (8th Cir. 1976). This last case was a suit by hotel owners challenging the conversion of the south tower of the Mansion House Center in downtown St. Louis from an apartment building to a hotel. One of plaintiffs' claims rested on state law that the conversion violated the city ordinance which had approved the redevelopment plan upon which the building had been constructed. The contention was considered by the district court under pendent jurisdiction. There it was held that plaintiffs lacked standing under Missouri law. The Eighth Circuit Court of Appeals, noting that the opinion of the district court on matters of state law is entitled to great weight, found "no clear error in the court's conclusion and therefore decline[d] to disturb it on appeal." The court at 766–67 stated: "Appellants cite no cases from Missouri or any other jurisdiction holding that an urban renewal ordinance should be deemed equivalent to zoning ordinances for purposes of determining standing to sue. *Gibson & Perin Co. v. City of Cincinnati*, 480 F.2d 936 (6th Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973), supports the trial court's decision that the ordinance in question does not provide for zoning of property and therefore does not confer standing upon adjoining property owners."

Relying on these two federal cases, defendants here assert that we should not extend the reasoning of the aforementioned Missouri cases, involving challenges to zoning ordinances, to this case involving a challenge to two ordinances dealing with urban redevelopment because of what defendants claim are numerous important differences between the two situations. The only distinction worth discussing is that the zoning statutes specifically provide for public hearings as well as administrative and judicial review for persons "aggrieved" by zoning decisions, §§ 89.050, 89.070, 89.100, and 89.-110 RSMo.1969, while no similar rights of protest and review are contained in Chapter 353 RSMo.1969. According to defendants it is logical to protect the right of public review in zoning cases, because zoning usually requires little capital expenditure, but it is not logical to allow protest and review of actions under Chapter 353 "because the act of redeveloping blighted areas under Chapter 353 anticipates huge outlays of money, investment, time and capital by a private redevelopment corporation, rather than the municipality."

■ While it is true that in *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954) the United States Supreme Court held that persons owning property inside a District of Columbia urban renewal project could not challenge the taking of their property on the grounds that their particular property was not run down or blighted,[3] at least three Missouri cases have considered challenges to ordinances enacted pursuant to Chapter 353 RSMo.1969,[4] indicating that specific statutory authority is not a prerequisite to sue to enjoin activities undertaken pursuant to Chapter 353 RSMo.

---

**2.** The statute referred to is 42 U.S.C. § 1450, et seq.

**3.** The decision does not hold that these persons lacked standing.

**4.** *Allright Missouri, Inc. v. Civic Plaza Redevelopment Corporation*, 538 S.W.2d 320 (Mo.banc 1976); *Annbar Associates v. West Side Redevelopment Corporation*, 397 S.W.2d 635 (Mo. banc 1965), *cert. denied*, 385 U.S. 5, 87 S.Ct. 41, 17 L.Ed.2d 4 (1966); *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation*, 518 S.W.2d 11 (Mo.1974).

1969. None of these three cases discuss standing and none are authority for conferring standing on plaintiffs here. But it seems clear, and defendants concede, that persons owning property inside a Chapter 353 redevelopment area have standing to challenge the ordinances declaring the area blighted and approving redevelopment plans for the area. Neither the lack of specific statutory authority for protest and review in Chapter 353, nor the fact that "the act of redeveloping blighted areas under Chapter 353 anticipates huge outlays of money, investment, time and capital by a private redevelopment corporation, rather than the municipality," convince us that persons owning property nearby but outside a redevelopment area should not have standing to challenge ordinances such as these as long as the normal requirements for standing are met. In view of the fact that persons owning property inside the redevelopment area would have standing to bring such a suit and the fact that nearby property owners would have standing if this were a zoning case, we reject any per se rule that these plaintiffs lack standing. The criteria for standing to be applied in the case at bar, a suit for declaratory and injunctive relief, is whether plaintiffs have a legally protectable interest at stake. *Regal-Tinneys Grove Special Road District of Ray County v. Fields,* 552 S.W.2d 719, 722[2, 4] (Mo.banc 1977) (declaratory judgment action under Rule 87.02(a) and § 527.020 RSMo.1969); *Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, supra,* 265 S.W.2d 374, 376–77 (Mo.1954) (suit for injunction); *Moseley v. City of Mountain Grove,* 524 S.W.2d 444, 446–47[3, 4, 6] (Mo. App.1975) (suit for injunction); *Allen v. Coffel, supra,* 488 S.W.2d 671, 674[3, 4] (Mo. App.1972) (suit for declaratory judgment and injunctive relief).

■ Taking plaintiffs' properly pleaded facts as true, giving the allegations a liberal construction and making reasonable inferences fairly deducible from the facts stated, as we are required to do in this situation, *Concerned Parents v. Caruthersville School District 18, supra,* 548 S.W.2d 554, 558[6] (Mo.banc 1977), we hold that plaintiffs, under the allegations of their petition, do have a legally protectable interest at stake. If the work on the redevelopment project were to stop in the middle of the project due to inadequate financing, the area very close to plaintiffs' properties could be partially or completely destroyed and could be left in a state of disarray. From plaintiffs' petition it appears that this would have a sufficiently adverse effect on plaintiffs' property interests to give plaintiffs standing to challenge the ordinance approving the redevelopment plan. *See, Eyerman v. Mercantile Trust Co.,* 524 S.W.2d 210, 212[1] (Mo.App.1975). Plaintiffs would also have standing to challenge the ordinance declaring the area blighted because such a declaration is one of the prerequisites to the commencement of redevelopment work. The trial court erred in dismissing plaintiffs' petition on the grounds that the petition failed to allege facts that gave plaintiffs standing. This does not eliminate, however, the necessity of producing evidence at time of trial to support plaintiffs' position on this issue.

■ We turn to the issue of whether the petition states a cause of action. Both parties recognize that the scope of judicial review in this case "is limited to whether the legislative determination was arbitrary or was induced by fraud, collusion or bad faith, or whether the City exceeded its powers." *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation, supra,* 518 S.W.2d 11, 15[1] (Mo.1974). *See also, Allright Missouri, Inc. v. Civic Plaza Redevelopment Corporation, supra,* 538 S.W.2d 320, 324[1] (Mo.banc 1976). "The issue of whether a legislative determination of blight is arbitrary turns upon the facts of each case. And, the burden of proving that it is arbitrary is upon the party so charging." *Allright, supra* at 324[2, 3]. As stated in *Parking Systems, supra* at 16, in determining whether this burden has been met "it must be kept in mind that the courts cannot interfere with a discretionary exercise of judgment in determining a condition of blight in a given area any more than they can interfere with a discretionary

exercise of judgment in zoning property, and as it has repeatedly been said in zoning cases, 'Unless it should appear that the conclusion of the City's legislative body in the respect in issue \* \* \* is clearly arbitrary and unreasonable, we cannot substitute our opinion for that of the City's \* \*. If the City's action \* \* \* is reasonably doubtful or even fairly debatable' we cannot substitute our opinion for that of the City Council." *See also, Allright, supra* at 324. ` *See generally,* What Constitutes "Blighted Area" Within Urban Renewal and Redevelopment Statutes, 45 A.L.R.3d 1096.

Defendants' position, with which the trial court agreed, is that plaintiffs' petition fails to allege any facts which would show that the city's determination was arbitrary or in excess of its powers and that plaintiffs are simply asking the court to substitute its judgment for that of the board of aldermen. Plaintiffs, on the other hand, contend that their petition does state facts showing that the enactment of the two ordinances in question was arbitrary or in excess of the city's powers. After examining the petition in detail we have concluded that some parts of the petition do state a claim upon which relief can be granted but other parts are spurious and cannot afford plaintiffs a basis for relief. For purposes of discussion, we divide the subparagraphs of plaintiffs' petition into two categories. In the first category are the subparagraphs alleging the ordinances are invalid on the grounds that they are inconsistent with sections of the revised city code or that procedural steps required by the revised city code were not followed when the ordinances were enacted. In the second category are all other subparagraphs. We first discuss those subparagraphs which fall into the first category.

Paragraph 8 of the petition sets out the grounds on which plaintiffs claim Ordinance 56791 (which declared the area blighted) is "void, invalid, arbitrary, unreasonable, capricious and unconstitutional." In subparagraph 8(a) plaintiffs allege that the area declared blighted was never considered by the plan commission subsequent to the introduction of Ordinance 56791 and prior to its passing nor was the bill as introduced accompanied by a determination from the plan commission that blighting and redevelopment of the area was necessary and in the public interest, "as required by Chapter 29 of the Revised Code, City of St. Louis." Subparagraph 8(i) states that Ordinance 56791 is invalid because it is inconsistent with a "Historic District Enabling Ordinance" and with an ordinance creating the "Central West End Historic District." Subparagraph 8(j) states: "The properties purportedly declared blighted are not in fact blighted in that it is not '. . . impossible and uneconomical for individual owners to independently undertake to remedy such conditions . . . .' as required by Section 29.010, Revised Code of St. Louis, if such properties are in fact blighted, but, on the contrary, the individual owners of the purportedly blighted properties are persons or corporations of substantial means."

Paragraph 10 of the petition sets out the grounds on which plaintiffs claim Ordinance 56933 (which approved the redevelopment plan) is "void, invalid, arbitrary, unreasonable and capricious." Each subparagraph of paragraph 10 relies on some alleged violation of a section of the revised city code. Subparagraph 10(a) states that the redevelopment plan failed to state which existing buildings are not to be demolished immediately. Subparagraphs 10(b) and 10(c) and 10(d) state that the plan fails to list information regarding residential units and plans for relocation of families who will be displaced by the redevelopment, etc. Subparagraph 10(e) states that the plan fails to state any proposed method of financing.

Plaintiffs cite several cases for the proposition that a municipal ordinance is invalid for failure to follow the procedural prerequisites to its enactment[5] but in all of these

---

**5.** *E. g., American Tobacco Co. v. Missouri Pac. Ry. Co.*, 247 Mo. 374, 157 S.W. 502 (banc 1912); *Baum v. City of St. Louis*, 343 Mo. 738, 123 S.W.2d 48 (1938); *State ex rel. Freeze v.*

cases the procedural prerequisites were set forth in a state statute or city charter. None of the cases deal with the situation presented here, where the procedural or substantive requirements are set forth in a city code, a codification and compilation of city ordinances. The issue then becomes: Under such allegations does the city have the power to enact ordinances in disregard of procedural or substantive requirements set out in earlier ordinances?

A city council is both an administrative and a legislative body. As an administrative body it acts in much the same way as and performs the same function of a board of directors. *Arkansas-Missouri Power Corporation v. City of Kennett*, 348 Mo. 1108, 156 S.W.2d 913, 919[12] (banc 1941). In that capacity it may fix the terms and pass upon city contracts. *City of Kennett, supra.* When acting as a legislative body it may act upon legislation and pass ordinances of a general and permanent character, as opposed to those of a temporary and special nature. If the purpose is to make new law it is generally held to be legislative. But if the proposition is to execute law previously established it is administrative. *State ex rel. Whittington v. Strahm*, 374 S.W.2d 127, 130 (Mo.banc 1964) citing and quoting McQuillan, Municipal Corporations, 3d ed., § 16.55, pp. 254–256; *Anderson v. Smith*, 377 S.W.2d 554, 557[2] (Mo.App.1964).

The procedural requirements referred to in plaintiffs' second amended petition are alleged to be required by Chapter 29 of the Revised Code of the City of St. Louis. Some of these, such as the requirement that the plan of redevelopment contain a financing statement, are alleged not to have been complied with. Introduction into the evidence of the pertinent ordinances referred to in the petition as embodied in Chapter 29 of the Revised Code

would disclose whether such ordinances are of a general and permanent nature setting out the procedural and substantive requirements contended by plaintiffs and alleged to have been violated by the board of aldermen in passing the second set of ordinances declaring the area blighted and approving the redevelopment plans.[6] Such later ordinances appear to be of an administrative nature, temporary and special in their application. They declare an area blighted and approve a redevelopment plan both of which constitute application of principles and procedures set out and described in general ordinances alleged to be set out in Chapter 29 of the Revised Code. They are the acts of the city board in its capacity of administering the general ordinances on the subject. They may not be construed as repealing, revoking or in any way changing the general ordinances establishing substantive rights and procedures because the board, like the state legislature, is prohibited by Article III, Section 40, (30) of the Constitution of Missouri, from passing any special law for such purposes where a general law is applicable. *Mathison v. Public Water Supply District No. 2 of Jackson County*, 401 S.W.2d 424, 432[10] (Mo.1966).

If the city passes an ordinance which violates rules or standards laid down by earlier ordinances without specifically repealing the earlier ordinances, the city may also be guilty of acting unreasonably and arbitrarily so that the new ordinance could be declared void. *See, Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation, supra*, 518 S.W.2d 11, 18–19 (Mo.1974) (the court discussed whether a city had complied with an earlier ordinance when it approved a redevelopment plan); *Annbar Associates v. West Side Redevelopment Corporation, supra*, 397 S.W.2d 635, 654–55[19] (Mo.banc 1965), *cert. denied*, 385 U.S. 5, 87 S.Ct. 41, 17 L.Ed.2d 4

---

*City of Cape Girardeau*, 523 S.W.2d 123 (Mo. App.1975); *Hatfield v. Meers*, 402 S.W.2d 35 (Mo.App.1966).

**6.** Courts generally do not take judicial notice of ordinances. Their existence and content must be proven in evidence like any other fact. *Ra-*

*macciotti v. Zinn*, 550 S.W.2d 217, 223[2] (Mo. App.1977); *Purdy v. Foreman*, 547 S.W.2d 889, 891[3] (Mo.App.1977); *State ex rel. Freeze v. City of Cape Girardeau, supra*, 523 S.W.2d 123, 127[4] (Mo.App.1975).

(1966). In *Annbar* the court refused to interfere with a determination by the city council that a financing statement which was included in a redevelopment plan as required by a city ordinance was in sufficient detail. But unlike *Annbar*, in paragraph 10 of this petition, plaintiffs here allege that the redevelopment plan approved by the board of aldermen contained *no* statement of financing contrary to a provision of the city code. Here plaintiffs also plead in paragraph 10 that other items required by the code to be included in proposed redevelopment plans were also absent from this plan when it was approved by the city. Each subparagraph of paragraph 10 states a cause of action on the grounds that the city's action in approving this redevelopment plan was arbitrary and unreasonable.

▮ Subparagraph 8(j) is somewhat similar in that it alleges that the city declared the area blighted when the area was not in fact blighted as defined by the city code. (Plaintiffs do not allege that the area was not blighted under the definition contained in § 353.020(2) RSMo. 1969.) This may be a ground to declare the ordinance declaring the area blighted void if at trial plaintiffs can meet their heavy burden of showing that the legislative determination that it was "impossible and uneconomical for individual owners to independently undertake to remedy such condition" (alleged to be a requirement of § 29.010, Revised Code of City of St. Louis) was clearly erroneous, arbitrary and unreasonable. *Parking Systems, supra* at 19[11].

Subparagraph 8(a) alleges the blighting ordinance is invalid because the plan commission did not make a recommendation to the board of aldermen "as required by Chapter 29 of the Revised Code." (Although the city need not follow the plan commission's recommendation, *Allright, supra* at 324[5].) With a complete absence of any financing plan, as compared to an allegedly defective one, if the city code actually requires a recommendation from the plan commission in this situation, the absence of any such recommendation could be

proof that a declaration of blight without following this step was arbitrary and unreasonable. Relying on *Prudential Building & Loan Association v. Urban Renewal and Community Development Agency of Louisville*, 464 S.W.2d 629 (Ky.App.1971), plaintiffs argue that a second finding or recommendation of blight was required with respect to the seven improved properties because these properties were not included in the 1971 ordinance declaring the area blighted. In the *Prudential* case no such finding was ever made with respect to the newly added property whereas here the plan commission did once recommend that the seven improved properties be included in the blighted area. The only theory upon which the lack of a second recommendation here could be considered arbitrary would have to be based upon requirements of the city code.

▮ The other subparagraph in this category, 8(i), fails to state wherein there is a direct conflict with earlier ordinances alleged to be "inconsistent" with the blighting ordinance. From the petition it appears that these earlier ordinances (Historic District Enabling Ordinance and Development Plan for Central West End Historic District) are merely general declarations of intent or policy with respect to the area in question. The city is free to change its mind concerning this area and to act inconsistently with previous policy declarations. Inconsistency with such ordinances is not equivalent to a case such as where a governmental body permits a change in the zoning of property contrary to a previously adopted comprehensive plan, *see, Plaas v. Lehr*, 538 S.W.2d 919, 921[1] (Mo.App.1976) (one difference being that there is a statutory mandate to act "in accordance with a comprehensive plan." § 64.090(1), Laws 1974). This subparagraph does not substantiate the charge that the city's action was arbitrary and unreasonable and it does not state a cause of action.

▮ In the second category of subparagraphs are all the other subparagraphs of paragraph 8. None of these subparagraphs state a cause of action. Subparagraph 8(b) alleges that the improved properties were not in fact blighted, not because

they were not blighted under the statutory definition, § 353.020(2) RSMo.1969, but because these properties "are well maintained properties in excellent condition with outstanding architectural and esthetic features." But "an area may properly be determined to be blighted even though it may contain some vacant land or structures which are not in themselves offensive." *Parking Systems, supra* at 15[3]. And an area may be found to be blighted even if it includes buildings or improvements which are not in themselves blighted if their inclusion "is deemed necessary for the effective clearance, replanning, reconstruction or rehabilitation of the area of which such buildings, improvements or real property form a part." § 353.020(1) RSMo.1969.

■ Subparagraph 8(c) alleges that declaring the improved properties blighted "substantially interferes with and has substantially reduced the value of said [plaintiffs'] properties because of the proximity of plaintiffs' properties to those at 21–65 Maryland Plaza and because of the similarity of the character, condition and style of plaintiffs' properties to those declared blighted and thereby constitutes a taking of plaintiffs' properties without due process of law in violation of plaintiffs' right, as guaranteed by Article I, Section 10, Missouri Constitution."[7] Subparagraph 8(d) alleges a deprivation of property without due process of law because "various proposed redevelopment plans would require substantial changes in parking and traffic patterns." Subparagraph 8(f) alleges a "taking of plaintiffs' properties without due process of law" because "the purported blighting would substantially change and destroy the existing residential character of the surrounding neighborhood by substantially changing traffic patterns and flow, by increasing noise, by increasing lighting and by destroying the distinctive character of the residences at 21–65 Maryland Plaza . . ." None of these allegations show a deprivation of any essential attribute of private property without due process. *See, State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20, 31–32[9]

(Mo.banc 1975). Furthermore, even if plaintiffs were being deprived of some property right, the petition fails to allege which aspect of due process was violated when the city deprived them of their property. Normally due process only requires notice and hearing but the petition does not claim any defect in this regard. These subparagraphs still fail to show any taking or damaging of plaintiffs' property which would entitle them to compensation under Article I, Section 26 of the Missouri Constitution. *See, State ex rel. State Highway Commission v. Galeener,* 402 S.W.2d 336, 340[5] (Mo.1966); *Behlman v. City of Florissant,* 548 S.W.2d 619 (Mo.App.1977).

■ Subparagraphs 8(g and h) allege that the designation of the seven improved properties as blighted is arbitrary and capricious because these properties are residential and "there is presently an inadequate supply of such residential structures in the area declared blighted and the area surrounding the allegedly blighted area, whereas, on the other hand, there is a surplus of commercial property as evidenced by several vacant commercial sites immediately across the street from 21–65 Maryland Plaza"; further, that any change from residential to commercial would be inconsistent with two plans, at least one of which was developed by the plan commission; and that "a primary purpose is to accomplish a rezoning." The allegations, although not entirely clear, would seem to infer that the blighting ordinance was being used to change the zoning of the seven properties from residential to commercial. If this be a correct interpretation of the allegations, the ordinance, if it was so framed, would obviously be void as an attempt to rezone the area without the following the procedures set out in Chapter 89 RSMo.1969 and the general ordinances of the city passed under authority of the zoning and planning statutes. If it is meant that the ordinance conflicts with the plan of the plan commission, the action of the board of aldermen is a discretionary legislative judgment reached after a consideration of all factors including the plan. *Allright, supra* at 324[3,

7. See footnote 1.

4]. The board of aldermen is free to act inconsistently with plans developed by the plan commission, just as it is free to act inconsistently with the plan commission's recommendation as to whether an area is blighted. *Allright, supra* at 324[5].

In subparagraph 8(e) plaintiffs allege that the designation of the seven improved properties as blighted "is arbitrary and capricious in that its purpose is not to redevelop an area in fact blighted but is rather to give tax and other improper advantages to a private real estate developer or developers . . ." But motives of a legislative body will generally not be inquired into by the courts. *State ex rel. Strait v. Brooks*, 220 Mo.App. 708, 293 S.W. 471, 475[8] (1927). The granting of tax incentives to developers, furthermore, is authorized by § 353.110 RSMo.1969.

Since plaintiffs' petition in part does state a cause of action, the trial court's order dismissing the petition cannot be sustained on this ground.

The judgment is reversed and the case remanded.

GUNN, P. J., and KELLY, J., concur.