**ALLRIGHT MISSOURI, INC. et al.,**
**Plaintiffs-Respondents,**

v.

**CIVIC PLAZA REDEVELOPMENT COR-**
**PORATION, Defendant-Appellant,**

and

**Kansas City, Missouri and John Danforth,**
**Attorney General of the State of**
**Missouri, Defendants.**

No. 59180.

Supreme Court of Missouri,
En Banc.

June 14, 1976.

Rehearing Denied July 12, 1976.

Sherwin L. Epstein, Stubbs, Epstein & Mann, Kansas City, for defendant-appellant.

William J. Koenigsdorf, Kansas City, for plaintiffs-respondents.

Edward E. Schmitt and Jesse L. Childers, Kansas City, for amicus curiae.

HENLEY, Judge.

This is an action in which plaintiffs-respondents seek: (1) a judgment declaring certain statutes of the state, ordinances of the city of Kansas City, and a contract of the city with defendant-appellant unconstitutional and void; and (2) an injunction enjoining all defendants from proceeding with a redevelopment project described in one of the ordinances. Judgment was for plaintiffs and one of the defendants appealed to the Missouri Court of Appeals, Kansas City district. That court affirmed the judgment. On application of defendant-appellant we ordered the case transferred to this court. We reverse and remand.

The plaintiffs, Allright Missouri, Inc., Phil Jacobs Building Corporation and Joseph D. and Anna Marie Cassata[1] (hereinafter referred to collectively as Allright) are owners or lessees of property located within a part of the business district of defendant, Kansas City (hereinafter the City), proposed for redevelopment by defendant-appellant, Civic Plaza Redevelopment Corporation (hereinafter Civic Plaza).

---

1. In addition to these plaintiffs, Research Hospital and Medical Center, also an owner of land within the area proposed for redevelopment, appeared and filed briefs in support of plaintiffs' position in the Court of Appeals and in this court, having been granted leave by the Court of Appeals to file briefs amicus curiae. References to contentions on appeal by Allright will include points briefed by the hospital and medical center.

Civic Plaza is an urban redevelopment corporation organized under Chapter 353.[2]

On March 9, 1967,[3] Civic Plaza filed with the city clerk an application for approval of a plan for redevelopment of a part of the business district. An amended development plan was filed April 30, 1969. The area proposed for this redevelopment is described generally as being bounded on the north by 13th street; on the east by Locust between 13th and 14th streets, and the junction of 14th street with the Crosstown Freeway; on the south by the Crosstown Freeway; and on the west by McGee street. The Jackson county courthouse and the public library are immediately north of and across 13th street from the area. One block north of the area is the City Hall and Police Headquarters. The new Federal Office building is immediately northeast and across the intersection of 13th and Locust streets. And the Election Board and State Office buildings are immediately east across Locust. The South Humboldt Urban Renewal Project lies generally east and northeast of the area. The Crosstown Center Urban Renewal Project described in *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation*, 518 S.W.2d 11 (Mo.1974) is one block west of the area.

The area covered by the plan consists of approximately six blocks divided into 26 separate tracts, 12 of which (or 45.4% of the total land area) are surface parking lots. The remaining 14 tracts are occupied by commercial buildings, eight of which are one-story, two are two-story, one is three-story, and two are six-story buildings. In general, the plan calls for the acquisition of all property in the project area and demolition of all buildings, except the Red Cross and Civic Plaza National Bank buildings. These two would be kept intact, but improved to conform to the overall design and scheme of rehabilitation. The plan includes the construction of several new buildings in

seven years. Phase 1 includes a six-level parking structure covering two blocks with three 25-story buildings (referred to as Towers) over the parking structure. Phases 2, 3 and 4 include rehabilitation of the Red Cross and Civic Plaza National Bank buildings and the construction of a new parking structure immediately south of those two buildings. Phases 5 and 6 include the construction of underground parking facilities and a park-like green area at ground level. Phase 7 includes the construction of an office building at least 14 stories high. The estimated cost is approximately $50,000,000.

After the amended plan was filed, the application was referred to The City Plan Commission (hereinafter the Commission). Notice was published that a public hearing would be held to consider the plan on May 22, 1969, at the City Hall. It was held; all proponents and opponents of the plan present and desiring to be heard were heard; thereafter the Commission filed its report recommending that the plan be disapproved for reasons fairly summarized by a committee of the City Council as follows:

"1. The area can be successfully redeveloped without the Urban Redevelopment law.

"2. The development plan does not proceed in an orderly fashion.

"3. The development plan does not adequately describe what will be built in the development area."

Thereafter, the matter of this redevelopment plan (with an ordinance which had been submitted to the Council by the Commission providing for disapproval of the plan) was referred by the City Council to its Committee on Plans and Zoning (hereinafter the Committee) for investigation, consideration, and its recommendation. After publication of notice that it would do so, the

---

**2.** References to chapter or sections of the statutes are to RSMo 1969.

**3.** Shortly after the filing of Civic Plaza's application, the City, on March 24, 1967, adopted a resolution declaring as blighted and in need of rehabilitation and redevelopment a large area

of downtown Kansas City designated in the resolution as "Central Business District Urban Renewal Area." The area proposed for redevelopment by Civic Plaza is within the Central Business District Urban Renewal Area.

Committee held a public hearing on September 25, 1969. Three witnesses testified for and 13 against the plan. In its report of this hearing the Committee referred to and summarized the contentions presented by the opponents as: (1) "that the present property owners did not want to sell their land," and (2) "that the Redevelopment Corporation did not have the financial ability as required by our ordinances to proceed with the project." In addition to this hearing, the Committee held other hearings, public and private, including discussions with the principals of Civic Plaza regarding its financial ability to carry out the project; meetings to view and investigate the project area; and discussions of the project at other meetings and council sessions. Along with knowledge acquired by its investigation and a transcript of the testimony heard at its September 25, 1969, hearing the Committee also had for consideration in its deliberations two dozen photographs of buildings and open spaces in the project area and a two-volume (estimated to be at least 300 pages) "Appraisal and Blight Study" made and prepared by the Vincent J. O'Flaherty Company for Civic Plaza and filed by it as one of the documents in support of its application. The report and recommendation of the Committee with its findings (and the evidence considered by it) was filed with the city clerk and an oral presentation thereof was made and discussed at a regular meeting of the City Council. With its report the Committee filed a "Committee Substitute for Ordinance No. 37349" and recommended that the substitute "do pass." The Committee's substitute ordinance, adopted by the City Council March 20, 1970, declared (1) that the area is blighted and redevelopment thereof as proposed in Civic Plaza's plan necessary and in the public interest; (2) that Civic Plaza is financially able to undertake and complete the plan as proposed; (3) that acquisition of the properties in the area by Civic Plaza through the power of eminent domain is necessary and in the public interest, and is authorized; (4) that the contract covering the redevelopment project (a copy of which was attached to the ordinance) as proposed and executed by Civic Plaza be executed for and on behalf of the City by its proper officers.

As indicated, the evidence available to and considered by the City Council in making its determination that the area was blighted and that Civic Plaza's proposed project for redevelopment thereof should be approved was voluminous. It related to the area generally and to each property proposed for acquisition. The buildings in the area range in age from three to over 70 years, most of them being well over 40 years old. Their condition (physical and functional) and the type of maintenance they have received is described in this evidence as "very poor," "poor," "fair," "good" or, in the case of two, a gasoline service station and a one-story bar and restaurant building, as "excellent." The service station is three years old and the bar and restaurant building six. The evidence as to design or architecture of the buildings ranged from "poor," to "outmoded," to "good." The O'Flaherty Company's appraised value of the land and buildings in the area was $4,400,000 of which $3,400,000 was assigned to land. The total assessed value of land and buildings for tax purposes was $506,000 (approximately 12.5% of the total appraised value) which produced annually ad valorem taxes of a little less than $39,000. Some of the witnesses at the hearing before the Committee expressed the opinion that the area was not blighted; others, that it was blighted.

The evidence heard by the trial court was substantially the same as that considered by the City Council.

Allright's position has been from the beginning, and continues to be, in general: (1) that the area described in Civic Plaza's application is not in fact blighted; (2) that Civic Plaza's application was not supported by factual evidence of blight; (3) that the City Planning Commission's disapproval of Civic Plaza's plan is conclusive evidence that the area is not blighted and redevelopment not necessary; and (4) that the finding of blight by the City Council was therefore arbitrary and unreasonable. From

these premises, Allright concludes and argues that the ordinance approving Civic Plaza's application and the contract between the City and Civic Plaza executed under authority of this ordinance violate the federal and state constitutions in that they authorize the taking, by eminent domain, of private property for private use.

The trial court found and concluded that the City Council's determination that the area is blighted was arbitrary and unreasonable. Civic Plaza contends that the court erred in so finding and concluding.

■ The parties agree that the applicable law is: in determining whether an area is blighted, the City Council acts in its legislative capacity; that, in this case, judicial review is limited to whether the legislative determination was arbitrary, there being no contention that such determination was induced by fraud, collusion or bad faith. *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation*, 518 S.W.2d 11, 15[1] (Mo.1974); *Annbar Associates v. West Side Redevelopment Corporation*, 397 S.W.2d 635, 650[9] (Mo.banc 1965); *State on inf. of Dalton v. Land Clearance for Redevelopment Authority of Kansas City*, 364 Mo. 974, 270 S.W.2d 44, 52[2] (1954).

■ The issue of whether a legislative determination of blight is arbitrary turns upon the facts of each case. And, the burden of proving that it is arbitrary is upon the party so charging. *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation*, supra (518 S.W.2d at 16).

The court said in *Parking Systems, Inc.*, supra, that in determining whether this burden of proof has been met, " * * * it must be kept in mind that the courts cannot interfere with a discretionary exercise of judgment in determining a condition of blight in a given area * * * and * * * '[u]nless it should appear that the conclusion of the City's legislative body in the respect in issue * * * is clearly arbitrary * * *, we cannot substitute our opinion for that of the City's * * *. If the City's action * * * is reasonably

doubtful or even fairly debatable' we cannot substitute our opinion for that of the City Council." 518 S.W.2d at 16.

■ The evidence on which the City's legislative body made its determination did not compel a conclusion that the area was blighted and the plan proposed for its redevelopment necessary and in the public interest. Nor did it compel a conclusion that it was not. There was room for reasonable differences of opinion and fair debate on this question. From evidence before it, this legislative body reasonably could have determined, as it did, that the area was "blighted" within the meaning of applicable statutes and ordinances. Hence, it may not be said that the adoption of the ordinance approving Civic Plaza's application amounted to an arbitrary exercise of legislative power. Allright failed to meet its burden of proof.

■ There is no merit in Allright's contention that the Commission's disapproval of Civic Plaza's plan is conclusive evidence that the area is not blighted and redevelopment not necessary. We note that the Commission's recommendation is not based on a finding that the area was not blighted. In fact its report does not mention what conclusion, if any, it reached on this question. The Commission's recommendation, whatever it may be, clearly is not conclusive or binding on the City Council on the question of whether an area is blighted and its redevelopment necessary and in the public interest. The authority and responsibility for making that determination is vested exclusively in the City's legislative body; not in the Commission. *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corporation*, supra (518 S.W.2d at 17–18[9]).

■ Allright has also taken the position and contended from the beginning that the evidence presented to the Commission, the Committee, and the City Council in support of Civic Plaza's method and means of financing the project was insufficient to support a determination by the City's legislative body that "sufficient funds were imme-

diately available and would be used for the redevelopment project."

Briefly, the evidence as to availability and sufficiency of funds to finance the project consisted of (1) a letter of commitment by Civic Plaza and its principals of certain stock and equities owned by them to guarantee acquisition of the necessary properties; (2) a resolution adopted by the board of Building Leasing Corporation committing itself to lend several million dollars to Civic Plaza for use in this project; (3) a consolidated financial statement of Building Leasing Corporation and Metropolitan Construction Company; (4) a letter from City Bond and Mortgage Company expressing its interest in development of the project and its intent and purpose to secure commitments from its institutional investors for long-term financing of the proposed improvements if the project should be approved by the City; (5) the report of the Committee of the results of its investigation of the financial condition of Civic Plaza and its principals and their ability to make available immediately sufficient funds or securities for normal equity financing of the project proposed.

Allright complains, in particular, that no investigation was made as to the authenticity of these commitments or Civic Plaza's financial ability; that there was no evidence of an audit of the consolidated financial statement referred to above or even an auditor's statement regarding its preparation and authenticity; and that the commitments and financial statement were mere "wordage and figures typed on a sheet of paper."

It was at least debatable from the record before the City Council that the proposed method of financing redevelopment of the area was adequate and that sufficient funds were available immediately for use as needed for normal equity financing of the project. Hence, it may not be said that adoption of the ordinance approving the application and Civic Plaza's proposed method and plans for financing was an arbitrary exercise of legislative power. *Parking Systems, Inc. v. Kansas City*

*Downtown Redevelopment Corporation,* supra (518 S.W.2d at 18–20[11, 12]).

 Having concluded that the City Council's action in the above respects was not arbitrary, it necessarily follows that the ordinance and contract were not an unconstitutional delegation of the power of eminent domain. *Annbar Associates v. West Side Redevelopment Corporation,* supra.

The judgment is reversed and the cause is remanded with directions that judgment consistent with this opinion be entered for Civic Plaza.

All concur.