**MARYLAND PLAZA REDEVELOPMENT CORPORATION, Appellant,**

v.

**Jan C. GREENBERG & Ronald K. Greenberg et al., Respondents.**

**Nos. 40697, 40846.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 13, 1979.

As Corrected Dec. 11, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1979.

Application to Transfer Denied
Jan. 15, 1980.

Jim J. Shoemake, G. Lane Roberts, Jr., Thomas M. Utterback, Guilfoil, Symington, Petzall & Shoemake, St. Louis, for appellant.

Armstrong, Teasdale, Kramer & Vaughan, Donald U. Beimdiek, Wm. J. Travis, St. Louis, for Medical Arts Bldg. Co.

Richard A. Hetlage, Richard P. Sher, J. Reed Johnston, Jr., Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for respondents Greenberg.

GUNN, Presiding Judge.

Appellant Maryland Plaza Redevelopment Corporation is a private redevelopment corporation organized pursuant to Chapter 353, RSMo 1969. On July 2, 1974, as the initial step of the two part procedure for urban redevelopment, the Board of Aldermen of the City of St. Louis passed Ordinance No. 56791 (Blighting Ordinance) blighting the Maryland Plaza area, which is bounded by Kingshighway Boulevard, the alley north of Maryland Plaza, Euclid Avenue and West Pine. On March 18, 1975 the Board of Aldermen took the second step and passed Ordinance No. 56933 (Development Ordinance) approving appellant's redevelopment plan for the blighted area and granting it the power of eminent domain. Thereafter, appellant filed a three count petition in condemnation against owners of three tracts of land in the area: count I involved property owned by S.A. and Flor-

ence Sperber [1]; count II, property owned by respondent Medical Arts Building; and count III, property owned by Gerhart Real Estate Company. Following a joint hearing on the petition, the trial court refused condemnation as to counts I and II but granted condemnation as to count III. In a consolidated appeal appellant challenges the denial of condemnation as to counts I and II.[2]

The trial court denied condemnation as to count I on unspecified grounds. As to count II, the trial court granted Medical Arts Building's motion to dismiss at the close of plaintiff-appellant's evidence and denied condemnation as the condemnation petition failed to contain a statement of the use for which the property was taken; that it failed to allege that the property was being taken for a public use; that appellants failed to establish a public use for the property and failed to prove a bona fide effort to agree on compensation; and that appellant's redevelopment plan did not consider redevelopment of the property in count II.

■■■ On appeal, our primary concern is with the correctness of the result—not the route by which it is reached. *State ex rel. Keeven v. City of Hazelwood*, 585 S.W.2d 557 (Mo.App.1979); *Farm Bureau Mut. Ins. Co. v. Broadie*, 558 S.W.2d 751 (Mo.App. 1977). When the trial court fails to assign grounds for its decision, as in count I, or assigns incorrect reasons, its judgment will be affirmed if supported by any reasonable theory. *Boswell v. Brinckmann*, 579 S.W.2d 781 (Mo.App.1979); *McHenry v. Claspill*, 545 S.W.2d 690 (Mo.App.1976). After consideration of the issues raised on appeal as to the validity of the blighting ordinance and the development ordinance, we affirm the trial court's denial of condemnation as to counts I and II.

■■■ Prior to addressing the procedural and constitutional issues concerning the two ordinances, we must consider respondents' contention that appellant's condemnation petition is barred by the two year limitations period of Rule 86.06, which provides:

The court, . . . shall appoint three disinterested commissioners, . . . to assess the damages which the owners may severally sustain by reason of such appropriation.

. . . [U]pon failure to pay the assessment aforesaid within ten days after it becomes final, or, in the case of a municipality, within thirty days thereafter, the court may, upon motion and notice by the party entitled to such damages, enforce the payment of the same by execution, unless the condemner shall, within said ten or thirty day period, elect to abandon the proposed appropriation of any property, by an instrument in writing to that effect, to be filed with the clerk of such court, and entered on the minutes of the court, and to so much as is thus abandoned the assessment of damages shall be void. If such appropriation be so abandoned as to any property, proceedings for the condemnation of the same property shall not be instituted again within two years after such abandonment. . . .

*Maryland Plaza Redevelopment Corp. v. Ziern*, a previous condemnation action concerning the same property as in the present petition, was dismissed without prejudice in the St. Louis Circuit Court on June 30, 1977 prior to the appointment of commissioners. In *State ex rel. Morton v. Allison*, 365 S.W.2d 563 (Mo. banc 1963), it was held that the purpose of the two year bar of Rule 86.06 is to "prevent the harassment of prop-

---

1. The respondents Greenberg were substituted as parties in place of S.A. and Florence Sperber.

2. We are aware of the conceptual difficulty of reconciling the trial court's denial of condemnation as to counts I and II and the award of condemnation as to count III. Because, as discussed infra, we hold the development ordinance void, appellant lacked the power of emi-

nent domain to condemn the property of Gerhart Real Estate in count III. However, at the time of the appeal, Gerhart Real Estate had withdrawn its exceptions to the commissioners' award of damages. Therefore, appellant's acquisition of the Gerhart Real Estate property is final and no challenge has been raised regarding it.

erty owners by a condemner who might choose to seek successive awards until, perchance, it might get one which it considered favorable." *Id.* at 566. *Accord: State ex rel. County of Mississippi v. Stallings,* 434 S.W.2d 588, 592 (Mo.1968). The express language and the purpose of Rule 86.06 make manifest that it is only applicable to abandonment of condemnation proceedings after the commissioners' assessment of damages. Because *Ziern* was dismissed prior to the appointment of commissioners, Rule 86.06 does not bar the present suit.

With the disposition of the Rule 86.06 prelude, we consider the cynosure of these proceedings—whether the trial court erred in rejecting appellant's acquisitive bid for respondents' property through the fulcrum of eminent domain. Appellant argues that the trial court erred in denying condemnation as to the property in counts I and II in that it was legitimately exercising its powers of eminent domain to acquire property in a blighted area pursuant to Chapter 353, RSMo 1969 and Chapter 29, Revised Code of St. Louis. To support its contention, appellant asserts that: (1) the Board of Aldermen acted reasonably in blighting the Maryland Plaza area; (2) the Board of Aldermen acted reasonably in approving appellant's redevelopment plan for the area and granting it the power of eminent domain; and (3) appellant's petition and proof were sufficient to uphold an award of condemnation. As could be expected, respondents argue otherwise in their disputations.

▪ In passing both the Blighting Ordinance and the Development Ordinance, the Board of Aldermen acted in its legislative capacity. We are bound by the ligatures of review to a determination of whether the action was arbitrary, the result of fraud, collusion, or bad faith, or whether the City exceeded its power. *Allright Missouri, Inc. v. Civic Plaza Redevelopment Corp.,* 538 S.W.2d 320 (Mo. banc 1976), *cert. denied,* 429 U.S. 941, 97 S.Ct. 358, 50 L.Ed.2d 311

(1976); *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.,* 518 S.W.2d 11 (Mo.1974); *Annbar Associates v. West Side Redevelopment Corp.,* 397 S.W.2d 635 (Mo. banc 1966), *cert. denied,* 385 U.S. 5, 87 S.Ct. 41, 17 L.Ed.2d 4 (1966); *Schweig v. City of St. Louis,* 569 S.W.2d 215 (Mo.App. 1978).[3] "The issue of whether a legislative determination of blight is arbitrary turns upon the facts of each case. And, the burden of proving that it is arbitrary is on the party so charging," *Schweig,* 569 S.W.2d at 223, quoting from *Allright,* 538 S.W.2d at 342. As it is respondents who are challenging the validity of the two ordinances, we review their arguments.

▪ In answer to appellant's count I concerning the Greenberg-Sperber property, respondents argue that the blighting of Maryland Plaza by Ordinance No. 56791 was arbitrary in that: (1) the City Plan Commission failed to consider or make recommendation to the Board of Aldermen regarding a particular portion of the area which was declared blighted; (2) the area was not in fact blighted, or, at least, some of the properties within the area were not blighted; and (3) the blighting of the area was part of a scheme to allow a taking of private property for private use. Respondent Medical Arts Building argues that the blighting in 1974 was arbitrary in that the Board of Aldermen's action was based on an out of date 1970 area study and recommendation by the City Plan Commission. Respondent Medical Arts' argument is congruent with respondent Greenberg's affirmative defense that the Plan Commission failed to study or make a recommendation as to the entire area blighted by the Blighting Ordinance as required by § 29.050, Revised Code of St. Louis. The Blighting Ordinance is essentially a reaffirmation of an earlier ordinance enactment approved April 6, 1971[4], both of which blighted overlapping areas. The minutes of the City Plan Commission and testimony of Dale

3. *Allright, Parking Systems, Annbar, Schweig* and *State on Inf. of Dalton v. Land Clearance Redevelopment Authority,* 364 Mo. 974, 270 S.W.2d 44 (banc 1954), provide full treatment

of the law regarding urban redevelopment under Chapter 353.

4. Ordinance No. 55901.

Ruthsatz, the Deputy Director of the Commission, demonstrate that in 1970 recommendation was made as to the blighting of the entire area covered by the 1974 Blighting Ordinance. Section 29.050, Revised Code of St. Louis, provides that "no referral of a board bill to the City Plan Commission is necessary in the event the introduction of the bill is accompanied by a recommendation . . . from the City Plan Commission." As a portion of the area had already been declared blighted based on a prior City Plan Commission recommendation to blight the entire area, we find that § 29.050 does not require a second recommendation as to blight. See *Schweig*, 569 S.W.2d at 226. Further, respondents did not produce sufficient evidence to overcome the Board of Aldermen's determination of blight or establish that it had acted unreasonably in reaffirming its earlier declaration of blight or that the blight had been removed. Furthermore, the Board of Aldermen may declare an area blighted despite a contrary recommendation of the City Plan Commission. *Allright*, 538 S.W.2d at 324.

Respondents urge a finding that the area is not blighted. But the record does not support their contention. The City Plan Commission's study disclosed a substantial undesirable mutation in the area. Sixty percent of the structures needed significant repair and the assessed valuation of property had decreased over 15% in a ten year period. From the evidence before it, the Board of Aldermen could have reasonably determined the area to be blighted. *Allright, Id.* at 324. Respondents' allegation that the area contained properties which were not in themselves blighted is legally insufficient. An area may be declared blighted even though it may contain structures which would not fall within the definitional ambit of blight. *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *Parking Systems*, 518 S.W.2d at 15; *State on Inf. of Dalton v. Land Clearance Redevelopment Authority*, 364 Mo. 974, 270 S.W.2d 44 (banc 1954). Section 29.020(1), Revised Code of St. Louis and § 353.020(1), RSMo 1969, specifically provide for the inclusion of nonblighted property within a blighted area:

Any such area may include buildings or improvements not in themselves blighted, . . . the inclusion of which is deemed necessary for effective clearance, replanning, reconstruction or rehabilitation of the area of which such buildings . . . form a part.

Respondents also contend in their attack on the Blighting Ordinance that its passage was part of a scheme to allow the unconstitutional taking of private property for private use. However, respondents offered no proof—only imputations—of fraud or bad faith on the part of the appellant or duplicity between the Board and appellant as to passage of the ordinance. Therefore, the allegation of a "scheme" or some sort of cabal must fail. We find no reason to invalidate the Maryland Plaza area Blighting Ordinance.

But the result regarding the Development Ordinance must be otherwise. Respondents offer two theories for invalidating the approval of appellant's development plan and the concomitant grant of power of eminent domain by the Development Ordinance. First, respondents challenge the validity of the Development Ordinance on the ground that the Board of Aldermen failed to follow the procedural requirements of Chapter 29, Redevelopment Procedures for Blighted Areas, Revised Code of St. Louis. Second, respondents challenge the constitutionality of the ordinance as a taking of private property without just compensation and for private purpose in violation of Mo. Const. Art. I, §§ 26 and 28, and Mo.Const. Art. VI, § 21.

Respondents argue that the approval of appellant's redevelopment plan and grant of power of eminent domain by the Development Ordinance is void in that the plan fails to contain a detailed statement of financing as required by Chapter 29, Revised Code of St. Louis. Their postulation has substantial worth. Section 29.080 provides that a development plan "*shall* contain . . (15) a *detailed* statement of the proposed method of financing the redevelopment."

(emphasis added). We are aware of *Ann-bar*'s admonition that: "[W]e will not substitute our judgment for that of the city as to how 'detailed' . . . [the] statement of financing is required to be. . . . Absent allegations of fact and clear proof that the approval of the plan was arbitrary . . . , it will be accepted by the courts as sufficient[.]" 397 S.W.2d at 655. But in this case, the financing plan is so desolate of any detail as to be completely inadequate.

Appellant's redevelopment plan submitted to the City Plan Commission referred to the proposed method of financing as follows:

15. Developer has formed an urban redevelopment corporation. That corporation may raise capital through the issuance of stock or through debt financing. It may be desirable to create limited partnerships with the managing partner being the redevelopment corporation or a successor in title to property acquired by the Developer. The subsidiary, successor or limited partnership will be bound by the terms and conditions of the development plan and the transfer of any right, title and interest to such subsidiary, successor or a limited partnership will not necessitate approval by the governing body of the City.

The City Plan Commission expressed concern as to the insufficiency of the appellant's statement of financing in a letter to appellant:

Because a number of very pertinent questions arose . . . concerning certain key elements of the proposed development plan, the Committee deferred action until such time as these questions can be satisfactorily answered. Therefore, the Committee is requesting the developer to further elaborate on and clarify, in writing, these areas of major concern.

\*   \*   \*   \*   \*   \*

1) . . . the capability of financing should be more fully documented . . (letter to Maryland Plaza Redevelopment Corporation, November 14, 1974)

Appellant's initial response to the Commission request for a more detailed statement as to financing was:

As to the capability of financing, any commitment is contingent upon approval by the Board of Aldermen of the redevelopment plan proposed, and therefore we are unable to reveal the names of lending institutions at this time. However, may we call attention to the fact that within recent months three major financial institutions in the City of St. Louis have financed major commercial and residential properties on Maryland Plaza. (letter to City Plan Commission, November 18, 1974)

Several days later appellant sent a second letter to the City Plan Commission:

At the present time it is contemplated that debt financing will be on a structure-to-structure basis. The cost of the common or public areas will be assigned proportionately to each structure and included in the financing of that structure with the lending institution. The equity or seed capital will be provided for all structures by the Developer, who will act as an umbrella corporation, thus retaining control over all aspects of the development. Naturally, when specific negotiations are undertaken with the lending institutions, certain modifications may result, but in no event will this result in a relinquishment of control of the project by the Developer. (letter to the City Plan Commission, November 26, 1974)

The City Plan Commission's recommendation to the Board of Aldermen was approval of appellant's redevelopment plan. The Board of Aldermen then passed the Development Ordinance declaring that the "development plan of Maryland Plaza Redevelopment Corporation, as submitted October 24, 1974, and supplemented on November 4 and November 18, 1974 . . . and recommended by the . . . (City Plan Commission) . . . is in the public interest. . . ." It is unclear whether the letter of November 26, 1974 from appellant to the City Plan Commission is incorporated into the development plan as approved by the Board of Aldermen. However, assum-

ing the November 26 letter is so incorporated, we find that in approving the plan the Board of Aldermen's action was arbitrary. The plan is destitute of the requisite detailed statement of financing. As such, the Development Ordinance fails to comport with procedural requirements and is thereby void. *See: State ex rel. Luechtefeld v. Arnold,* 149 S.W.2d 384 (Mo.App.1949) (holding zoning ordinance void for failure of compliance with the procedural requirements of the general zoning ordinance). *Schweig* stated that failure of the Board of Aldermen to comply with the procedural requirements of Chapter 29, Revised Code of St. Louis, in approving a redevelopment plan could be the basis of finding that it acted arbitrarily and beyond its power. 569 S.W.2d at 225. Fully aware that we are not to substitute our judgment as to how "de-

tailed" the financing statement must be, *Annbar,* 397 S.W.2d at 655, we find an absence of any detailed statement. Statements found in appellant's November 26, 1974 letter to the City Plan Commission such as "debt financing will be on a structure-to-structure basis" or "the cost of public areas will be assigned proportionately to each structure" or "the . . . seed capital will be provided for all structures by the Developer" establish nothing. They are vague, general comments as to the proposed method of financing. They are too scant in information to be considered even rudimental, much less detailed. Similar instances of review regarding financing requirements establish that if sufficiency of financing is at least debatable, it is not arbitrary.[5] In this case, the determination by the Board of

---

5. In *Allright,* evidence before the court as to financing was:

(1) a letter of commitment by Civic Plaza and its principals of certain stock and equities owned by them to guarantee acquisition of the necessary properties; (2) a resolution adopted by the board of Building Leasing Corporation committing itself to lend several million dollars to Civic Plaza for use in this project; (3) a consolidated financial statement of Building Leasing Corporation and Metropolitan Construction Company; (4) a letter from City Bond and Mortgage Company expressing its interest in development of the project and its intent and purpose to secure commitments from its institutional investors for long-term financing of the proposed improvements if the project should be approved by the City; (5) the report of the Committee of the results of its investigation of the financial condition of Civic Plaza and its principals and their ability to make available immediately sufficient funds or securities for normal equity financing of the projects proposed. 538 S.W.2d at 325.

The court in *Parking Systems* sets forth the following testimony to demonstrate that the adequacy of the plan for financing was at least debatable:

Q. [Counsel for appellants] Do you remember what it was that persuaded you [that the financing was adequate]?

A. [Mr. Stubbs, a member of the Council] It was a combination of all the evidence of financial capability that had been presented to us up to that time.

Q. Did the letters from banks play any part in your coming to that conclusion?

A. Letters from banks were a part of the financial data that was supplied and took

part in it like everything else that was presented to me.

Q. Well, is it fair to say, * * * that without letters from lending institutions you would not have been persuaded to approve the plan?

* * * * * *

A. The requirements that the Council made over and above the requirements of the statute were that we be satisfied that the applicant at least had the ability to acquire the land and clear the blight in question and that could have been, that information could have been supplied a number of different ways. I suppose if they had a pile of money on the table that would have satisfied me. In this case letters of commitments and other evidence was supplied that eventually was satisfactory.

Q. There never was any evidence submitted that they had the cash on hand, available to acquire the land and clear the blight?

A. No, I think not.

Q. So, in fairness when you get down to it, in this particular case, it was the letters from the banks, was it not that calmed any doubts that you had?

A. No, it was a combination of what was presented * * * which included letters from banks. It included appraisals of the relative value of the land and the cost to clear the blight therefrom and it included what amounted to some live testimony at hearings before the Committee and eventually one hearing before the City Council and as I [said] in all honesty it was a combination of all those items that finally convinced me that this applicant did meet the test as required by the ordinance. 518 S.W.2d at 19, 20.

Aldermen that appellant's redevelopment contained a "detailed" statement of financing was without a factual foundation and, thus, arbitrary. We hold that the Development Ordinance granting appellant the power of eminent domain is void for failure to contain a detailed statement of financing as required by Chapter 29, Revised Code of St. Louis.

Although our ruling that the Development Ordinance is void provides sufficient ground to affirm the trial court's denial of condemnation as to both counts I and II, we shall nevertheless briefly deal with the remaining issue on appeal.

■ Respondent Medical Arts Building lodges a procedural assault on the validity of the Development Ordinance. It argues that failure of appellant's redevelopment plan to contain a statement as to the proposed use of respondent's property is a fatal variance from the procedural requirements of Chapter 29 of the City Code—a worthy theorem. Section 29.080 requires that a redevelopment plan deal with the proposed use of each piece of property within the area sought to be redeveloped. A redevelopment plan must contain:

a statement of the various stages by which development is to take place. . . together with . . . definite designation of the real property to be included in each stage. § 29.080(3)
a statement of the existing buildings . . . to be demolished immediately. § 29.080(4)
a statement of existing buildings not to be demolished immediately. § 29.080(5)
a statement of the proposed improvements . . . to each building not to be demolished immediately. § 29.080(6)

Appellant's two stage redevelopment plan lacks consideration of the Medical Arts Building either in its statements as to the stages of development or as to buildings to be demolished or improved. In fact, the complete redevelopment plan is silent regarding its intentions for the Medical Arts Building—a § 29.080 City Code deviation.

Such silence creates an insuperable revetment blocking appellant's efforts at the acquisition of the Medical Arts Building, albeit it is the primary tenant within that structure. Therefore, as before, approval of a procedurally defective plan by the Board of Aldermen was arbitrary and therefore void.

In addition to the procedural attacks on the Development Ordinance, respondents challenge its constitutionality, charging that it allows a taking of private property without just compensation and for private purpose, thereby violating the protective aegis of Mo.Const. Art. I, §§ 26 and 28, and Mo.Const. Art. VI, § 21. Respondents submit that appellant is not presently financially capable to acquire their property. They concede that appellant obtains no title to property until it escrows an amount equal to the commissioners' award of damages. See Rule 86.08. However, respondents express concern that if, after filing exceptions to the commissioners' award, they should receive a higher jury award of damages, appellant would have no funds to pay the increased damages. Such an argument, on the facts of this appeal, is premature and too speculative to decide. But, respondents have a legitimate concern that private redevelopment corporations should be financially responsible developers with the capability of financing the plan to a successful completion, particularly as they are frocked with the awesome and extraordinary power of eminent domain. The § 29.080(15) requirement of a "detailed" statement of financing gives some procedural safeguard to property owners in a blighted area that a private redeveloper will be financially able to acquire properties within the area sought to be redeveloped. It is for that reason that a redevelopment plan must be in strict compliance with the procedural strictures of the enabling legislation—including the local legislative body—to assist in ensuring the financial responsibility of a private redevelopment corporation.[6]

---

**6.** *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir. 1978), *cert. denied,* ——

U.S. ——, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979), is somewhat akin to the issues raised in this

Respondents also argue that the Development Ordinance allows a taking of private property for a private use. They assert that there must be a nexus between the taking of an individual piece of property and the public purposes of removal of blight. Here, respondents urge that such imbrication is lacking; that appellant is abusing its power of eminent domain by acquiring property through the judicial process for private gain, viz: appellant's refusal to exercise an option to purchase property sought to be acquired in eminent domain; and that the appellant corporation with its alleged financial instability is no more than a shell to transitorily obtain ownership of condemned property to pass title to the principals of the appellant and others having personal associations with them. Respondents' factual support for its contentions is too frail to persuade a finding of intentional wrongdoing. However, we are not insensate to the concerns of the property owner in a blighted area that there be a plan of responsible development to ensure the fulfillment of the public purpose of the removal of blight. Strict compliance with the procedural requirements of local legislation—in this case, Chapter 29, Revised Code of St. Louis—is essential. And Chapter 29's requirement that the plan contain a statement of the proposed use of each parcel of property within the area should provide the node between the taking of private property and the public purpose of the removal of blight and the redevelopment of the area to productivity.

Finally, as we find the Development Ordinance invalid in granting appellant the power of eminent domain without the req-

uisite detailed financial plan, it is unnecessary to review the trial court's findings regarding insufficiency of appellant's petition and proof as to count II. However, the trial court ruled that appellant failed to prove a bona fide effort to agree to compensate for its acquisitions. Because of the seriousness of respondents' allegation that appellant is abusing the grant of the power of eminent domain to acquire private property for purely private use and gain, we emphasize that ". . . it has been a firmly settled principle of law that when the authority to condemn is conditioned upon the inability of the condemnor and the owner to agree upon the amount to be paid, and no effort of the condemnor to effect agreement is shown, the condemnation petition cannot be maintained." *State ex rel. State Hwy. Com'n v. Pinkley*, 474 S.W.2d 46, 49 (Mo.App.1971).

The dint of eminent domain is mighty. It is in derogation of the common law and is traditionally reserved to the sovereign. *Nishnabotna Drainage Dist. v. Campbell*, 154 Mo. 151, 55 S.W. 276 (1900). The exercise of its power must be in strict compliance with the strictures under which it is granted. *State ex rel. Fugatt v. Hawkins*, 264 S.W.2d 387 (Mo.App.1954). But to be balanced against this fine legal rubric is the fundamental precept to abjure any violation of Chapter 353 legislative intendment and the beneficial purposes of urban redevelopment. Here, appellant's plan has failed to comply with the procedural requirements of Chapter 29, Revised Code of St. Louis, especially with regard to a detailed financial plan. It is for that reason

case. In *Garland*, plaintiff brought an inverse condemnation action against the City of St. Louis for a de facto taking of plaintiff's property. In June 1971, the City blighted the area in which plaintiff's property was located. In April, 1973 the City passed a redevelopment ordinance, granting the power of eminent domain to Mercantile Redevelopment Corporation, a private redevelopment corporation organized pursuant to Chapter 353, RSMo 1969. Plaintiff alleged that after the redevelopment corporation ordered plaintiff to vacate its premises, the redevelopment corporation ceased redevelopment plans in the area due to

inadequate financing. The plaintiff alleged that the City failed to secure a detailed financing plan as required by § 29.080(15), Revised Code of St. Louis. The district court dismissed the petition for failure to state a cause of action in that the plaintiff failed to allege a physical invasion or appropriation of the property. The court of appeals reversed and remanded, finding that the district court's interpretation of a de facto taking too restrictive. On remand, the Eighth Circuit ordered the district court to resolve the issue of the City's liability for the acts of the private redeveloper.

that the approval of the plan by the Board of Aldermen was arbitrary and beyond the scope of power as restricted by Chapter 29, Revised Code of St. Louis, enacted pursuant to Chapter 353, RSMo 1969.

Judgment affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.