Martin SCHWEIG, Jr., Robert Wood, Christopher Canepa, Adele Mitchell, James Dwyer and Elizabeth Roth, Plaintiffs-Appellants,

v.

MARYLAND PLAZA REDEVELOPMENT CORPORATION and City of St. Louis, Defendants-Respondents.

No. 47413.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 24, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Aug. 28, 1984.

Application to Transfer Denied
Oct. 9, 1984.

John Gianoulakis, Terry Lueckenhoff, St. Louis, for plaintiffs-appellants.

Samuel Ebling, G. Lane Roberts, St. Louis, for defendants-respondents.

James J. Wilson, City Counselor, Edward J. Hanlon, Julian L. Bush, Asst. City Counselors, St. Louis, for City of St. Louis.

PUDLOWSKI, Judge.

This is an equitable action for declaratory and injunctive relief by appellants Martin Schweig, Jr., Robert Wood, Christopher

Canepa, Adele Mitchell, James Dwyer, and Elizabeth Roth. Appellants challenged the validity of City of St. Louis Ordinance No. 58197. This ordinance named respondent Maryland Plaza Redevelopment Corporation ("MPRC") the developer of the Maryland Plaza neighborhood in the City of St. Louis. The trial court sitting without a jury entered judgment in favor of MPRC and the City of St. Louis. We affirm.

Appellants Dwyer, Roth, and Schweig are partners in the Hill Building Partnership, which owns the Hill Building located at 4660 Maryland Avenue. Appellants Canepa, Mitchell, and Wood are partners in Argyle Associates, a partnership which owns residential and commercial property at Nos. 2 to 10 Maryland Plaza, 4905–15 Argyle, 4906–14 Argyle, and 4905–15 Lindell Boulevard. Argyle Associates' property is known collectively as the Bannister Estate. At the time of trial, a condemnation suit was pending against the Hill Building and another was threatened against the Bannister Estate.

MPRC operates as a Missouri redevelopment corporation organized under the Urban Redevelopment Corporations Law, Chapter 353, RSMo 1978. At the time of trial, its president was A.J. Cervantes.[1] Its sole shareholders were Mr. Cervantes and Chase Hotel, Inc.

Mr. Cervantes and his wife also own the Fairmont Hotel located at Nos. 1 to 13 Maryland Plaza. Harold Koplar, a major shareholder in Chase Hotel, Inc. and MPRC's primary financial backer, and his wife own the Saks Building located at No. 26 to 40 Maryland Plaza. Koplar Properties, Inc. owns three residential townhouses located at Nos. 27, 47, and 59 Maryland Plaza.

MPRC first became involved with the redevelopment of Maryland Plaza in 1974. The Maryland Plaza area is generally bounded by Lindell Boulevard, Kingshigh-

way Boulevard, Maryland Plaza, and Euclid Avenue in the central west end of the City of St. Louis. On July 2, 1974, the Board of Aldermen blighted this area under Ordinance No. 56791.[2] On March 18, 1975, the Board of Alderman passed Ordinance No. 56933 approving MPRC's redevelopment plan for the blighted area and granting it the power of eminent domain.

Thereafter, property owners in the area adjacent to the blighted neighborhood challenged the validity of Ordinances Nos. 56971 and 56933. Appellants Martin Schweig and James Dwyer were two of the plaintiffs. The trial court dismissed plaintiffs' second amended petition. On appeal, we found that plaintiffs' petition stated a cause of action and remanded the case to the trial court to determine whether Ordinance No. 56933 embodied a detailed statement of financing and whether the Maryland Plaza neighborhood was in fact blighted. See Schweig v. City of St. Louis, 569 S.W.2d 215 (Mo.App.1978).

In the meantime, MPRC instituted condemnation suits against property owners in the Maryland Plaza neighborhood. In Maryland Plaza Redevelopment Corporation v. Greenberg, 594 S.W.2d 284 (Mo. App.1979), we invalidated Ordinance No. 56933 because the redevelopment plan it embodied failed to contain a detailed statement of financing. We, however, found the blighting ordinance valid.[3]

As a result of Maryland Plaza, MPRC submitted a new development plan with the Community Development Agency. This plan included a statement of financing consisting of five pages. It hinged upon Messrs. Cervantes and Koplar's willingness to personally guarantee the loans necessary to complete the redevelopment project. The plan also projected that all property not then controlled by MPRC would be acquired by it.

1. Mr. Cervantes died while this case was pending appeal.

2. The Board of Aldermen first blighted the Maryland Plaza neighborhood in 1971 under Ordinance No. 55901.

3. Ordinance No. 56791.

In August 1980, the Community Development Agency reviewed MPRC's plan and a plan submitted by a rival redevelopment corporation. The Community Development Agency recommended that MPRC remain the redeveloper for Maryland Plaza. On December 5, 1980, the Board of Aldermen passed Ordinance No. 58197 conferring redevelopment rights to MPRC and granting it the power of eminent domain to acquire any or all property within the blighted area. This area included appellants' property.

The present action began when appellants brought suit against MPRC and the City of St. Louis. Appellants sought Ordinance No. 58197 to be declared invalid; MPRC's eminent domain powers voided; and MPRC and the City of St. Louis enjoined from enforcing Ordinance No. 58197 and from exercising the power of eminent domain against their property. Appellants also sought actual damages of $300,000 and punitive damages of $500,000. The latter count was dismissed before trial. This action was then tried without a jury. The trial court entered judgment in favor of MPRC and the City of St. Louis on appellants' petition.[4] The trial court also filed detailed findings of fact and conclusions of law. This appeal follows.

Appellants predicate their challenge to Ordinance No. 58197 on four grounds. First, appellants argue that MPRC's use of eminent domain to acquire appellants' property is unlawful because no public purpose or use would be served. Second, appellants dispute the validity of Ordinance No. 58197 because fee ownership of their property by MPRC is not necessary to accomplish the rehabilitation of Maryland Plaza. Third, appellants challenge the validity of Ordinance No. 58197 because MPRC's development plan failed to contain a sufficiently detailed statement of financing. Last, appellants also dispute the ordinance's validity because the redevelopment agreement between the City of St. Louis and MPRC lacked mutuality of obligation.

Appellants first argue that MPRC's use of the power of eminent domain to acquire appellants' property is unlawful because no public purpose or use would be served. Appellants insist that MPRC's scheme is to continue private use of appellants' well maintained property. They further contend that MPRC intends to use their building as rental properties without renovation or a change in tenants. The only change appellants foresee is a different lessor collecting rents. They urge upon this court that this is a taking of private property for private gain, a patently nonpublic result. We disagree.

Our determination as to whether the taking of private property by eminent domain is for a private or public purpose is limited.

> [F]inal determination of the question whether the contemplated use of any property sought to be taken under the Law here in question is public rests upon the courts, but that a legislative finding under said law that a blighted or insanitary area exists and that the legislative agency proposes to take the property therein under the processes of eminent domain for the purpose of clearance and improvement and subsequent sale upon such terms and restrictions as it may deem in the public interest will be accepted by the courts as conclusive evidence that the contemplated use thereof is public, unless it further appears upon allegation and clear proof that the legislative finding was arbitrary or induced by fraud, collusion or bad faith.

*State on inf. of Dalton v. Land Clearance for Redevelopment Authority of Kansas City,* 364 Mo. 974, 270 S.W.2d 44, 52 (banc 1954); *Annbar Associates v. West Side Redevelopment Corporation,* 397 S.W.2d 635, 646 (Mo. banc 1965), *appeal dismissed,* 385 U.S. 5, 87 S.Ct. 41, 17 L.Ed.2d 4 (1966). The burden of demonstrating that a legislative finding is arbitrary rests upon the appellants and the finding must be upheld where its determination is at least reasonably doubtful or fairly debatable. *Allright Missouri, Inc. v. Civic Plaza*

---

4. The City of St. Louis was not present at trial.

*Redevelopment Corporation,* 538 S.W.2d 320, 324 (Mo. banc 1976), *cert. denied,* 429 U.S. 941, 97 S.Ct. 358, 50 L.Ed.2d 311 (1976).

Respondent City of St. Louis, as a constitutional charter city, has the right of eminent domain. Under the Urban Redevelopment Corporations Law, Chapter 353, RSMo 1978, and Chapter 29, Revised Code of the City of St. Louis, the City may delegate its eminent domain powers to a redevelopment corporation. Chapter 29 requires a redevelopment corporation to submit a development plan, which may be enacted as an ordinance, to the Board of Aldermen and its investigative organ, the Community Development Agency. This ordinance may contain a grant of eminent domain power to the redevelopment corporation to acquire property within the development plan. This grant must be in the public interest and serve a public purpose, i.e., the rehabilitation of a blighted area. Once the Board of Aldermen enacts an ordinance approving a development plan, the City must enter into a redevelopment agreement with the redevelopment corporation.

In the present case, appellants have failed to sustain their burden of establishing that MPRC's prospective taking of their property will serve only a private use. The Board of Aldermen specifically found a public purpose in Ordinance No. 58197. We are bound by that finding unless it was arbitrary or induced by fraud, collusion, or bad faith. *Annbar Associates,* 397 S.W.2d at 646. In *Annbar Associates,* the Missouri Supreme Court upheld Chapter 353 against an attack that it permitted the taking of private property for private use. "The thrust of that opinion is that redevelopment of blighted urban areas is in the public interest and is therefore a public

use." *State ex rel. Devanssay v. McGuire,* 622 S.W.2d 323, 326 (Mo.App.1981).

We focus not on the use of property taken by eminent domain, but on whether the exercise of eminent domain will contribute to the redevelopment of the blighted area as contemplated by Chapter 353. *Annbar Associates,* 397 S.W.2d at 649. We agree with appellants that MPRC contemplates no significant change in the commercial and residential use of their buildings after condemnation. These uses are and will continue to be private ones. However, it is not the end use to which these buildings are put that determines whether the taking is for public use, but whether the taking aids the redevelopment of the blighted area.[5]

In the instant case, MPRC's development plan substantially complies with the requirements of Chapter 29, Revised Code of the City of St. Louis. Chapter 29 requires the development plan to contain a statement of the proposed use of each parcel to be acquired. The plan must establish "the node between the taking of private property and the public purpose of the removal of blight and the redevelopment of the area to productivity." *Maryland Plaza,* 594 S.W.2d at 292. MPRC's plan clearly shows the taking of appellants' property will aid the rehabilitation of the blighted Maryland Plaza neighborhood.

MPRC contemplates extensive interior renovation of the lobby and other interior spaces of the Hill Building. A glass-like addition is also planned for the north side of this building at street level. MPRC also intends to extensively renovate the Bannister Estate property. MPRC plans to preserve the bay windows and doorways and add architectural lighting to the building at Nos. 2–10 Maryland Plaza. The properties

---

5. In *Hawaii Housing Authority v. Midkiff,* —— U.S. ——, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the property taken by eminent domain was transferred in the first instance to private beneficiaries. The residential use of the property remained unchanged. In its decision, the U.S. Supreme Court looked beyond the end use to which the property was put to the Hawaiian state legislature's determination that the con-demnation served the public purpose of reducing a land oligopoly. The court said it would not substitute "its judgment for a legislature's judgment as to what constitutes a public use unless the use be palpably without reasonable foundation." —— U.S. at ——, 104 S.Ct. at 2329 *citing United States v. Gettysburg Electric R. Co.,* 160 U.S. 668, 680, 16 S.Ct. 427, 429, 40 L.Ed. 576 (1896).

at 4905–15 Argyle, 4906–14 Argyle, and 4905–15 Lindell are to be extensively renovated so as to provide quality residential units. In all of these buildings, MPRC plans to upgrade the electrical, plumbing, heating, air conditioning, and ventilating equipment.

■ Under this point, appellants also argue that MPRC's plan to sell the entire project at a profit is evidence that the purpose of the redevelopment is not public. We disagree. The Urban Redevelopment Corporations Law expressly authorizes the sale of real property acquired by a redevelopment corporation. RSMo § 353.170(3) (1978). Moreover, as long as the primary purpose of an act is public, the fact that special benefits accrue to certain private persons does not deprive the action of its public character. *State ex rel. Atkinson v. Planned Industrial Expansion Authority of St. Louis*, 517 S.W.2d 36, 45 (Mo. banc 1975). We have already determined the redevelopment of Maryland Plaza serves a public purpose. Any profits MPRC would derive from the sale of property would be incidental to the public purpose of redeveloping Maryland Plaza.

■ We next address Subpoint B of appellants' first point on appeal. Appellants argue that fee ownership of this property by MPRC is not necessary to accomplish the rehabilitation of Maryland Plaza and; therefore, Ordinance No. 58197 is void for authorizing the taking of a fee, a greater interest than appellants say is necessary. They contend a parcel development agreement would be fully adequate to effectuate MPRC's redevelopment plan. We disagree.

Under Ordinance No. 58197, the Board of Aldermen of the City of St. Louis granted MPRC the power of eminent domain to acquire any property within the redevelopment area. This grant is part of a city ordinance and we will not substitute our judgment for that of the Board of Aldermen even if the City's legislative determination is reasonably doubtful or fairly debatable. *Allright Missouri*, 538 S.W.2d at 324. "The propriety, expediency, and necessity of a legislative act are purely for the determination of the legislative authority, and are not for determination by the courts." *In re Kansas City Ordinance No. 39946*, 298 Mo. 569, 252 S.W. 404, 407 (banc 1923). In particular, where a statute authorizes the taking of a fee, a court may not invalidate it on the ground that a lesser interest was only required to accomplish the purpose the legislature had in view. This is a legislative and not a judicial question. *Bradley v. Elsberry Drainage District*, 425 S.W.2d 950, 955 (Mo.1968), *citing Valentine v. Lamont*, 13 N.J. 569, 100 A.2d 668, 672 (1953).

■ Appellants emphasize the fact that certain property owners in the Maryland Plaza area have executed parcel development agreements with MPRC. They also state that MPRC's president testified that the project would be successful without 100% ownership by MPRC. We agree that the redevelopment of the Maryland Plaza area could quite possibly be accomplished if MPRC and appellants agreed to join in a parcel development agreement. However as previously stated, we cannot substitute our judgment for that of the Board of Aldermen even if their action is reasonably doubtful or fairly debatable. *Allright Missouri*, 538 S.W.2d at 324. Under Ordinance No. 58197, the Board granted MPRC the power of eminent domain to acquire any property within the Maryland Plaza area. Appellants failed to cite and we can find no authority for a court to order a redeveloper to enter into a parcel development agreement.

Appellants next argue that the Board of Aldermen's enactment of Ordinance No. 58917 was arbitrary and void because MPRC's redevelopment plan failed to contain a detailed statement of financing as required by Section 29.080(15), Revised Code of the City of St. Louis. Appellants contend the statement of financing expressed only hopes and wishes and not a viable plan of financing. They challenge the Board's determination that the method of financing was adequate because MPRC had never earned a profit; its negative net worth was $345,000; and its major stock-

holder, Chase Hotel, Inc., was two years delinquent in its city tax payments. Moreover, neither the Board of Aldermen nor the Community Development Agency investigated the personal financial status of Mr. Cervantes or Mr. Koplar, the two men who agreed to personally guarantee all the loans necessary to complete the redevelopment project.

■ Our review of a redevelopment ordinance is limited to whether the legislative determination was arbitrary or induced by fraud, collusion, or bad faith. *Annbar Associates*, 397 S.W.2d at 655. We also take heed of the Missouri Supreme Court's admonition in *Annbar Associates* that a court is not to substitute its own judgment for that of a legislative body as to how detailed the statement of financing is required to be. *Id.* In so doing, we presume a certain expertise in the Community Development Agency and Board of Aldermen in determining the potential of financing in the City of St. Louis. *Devanssay*, 622 S.W.2d at 328. Moreover, if the method of financing embodied in the ordinance is at least fairly debatable, we cannot hold the Board's determination to be arbitrary and void. *Allright Missouri*, 538 S.W.2d at 325.

We note that Section 29.080(15), Revised Code of the City of St. Louis, requires a redevelopment plan to contain:

A detailed statement of the proposed method of financing the redevelopment which shall set forth the estimated cost of the project, as defined in Section 29.-020(5), and the proposed source of funds, debt and equity to meet such estimated cost.

It need not contain, however, statements of committed financing or committed financiers. *Devanssay*, 622 S.W.2d at 327.

In *Devanssay*, we interpreted the statutory predecessor of Section 29.080(15) to require a redevelopment plan to contain sufficient information to determine the availability of adequate methods of financing.

The plan must contain a description of the method by which the redeveloper proposes to obtain the money necessary to complete the redevelopment. This description must be sufficiently detailed to afford the Board [of Aldermen] a basis for determining its feasibility. It must be something more than a "wish list" or the indefinite generality found in *Maryland Plaza*.

622 S.W.2d at 327. We also recognized "that in this economic period it would be nearly impossible to delineate with particularity the precise sources of financing." *Id.*

Clearly, any viable redevelopment plan requires an adequate financial base. The legislative body must possess information to determine that such base exists before it can realistically access the viability of the proposed plan. *Devanssay*, 622 S.W.2d at 326. This is particularly true with redevelopment corporations because they usually have few or no assets themselves. *Id.* In *Schweig*, we warned of the danger to the blighted area "[i]f the work on the redevelopment project were to stop in the middle of the project due to inadequate financing." 569 S.W.2d at 223. Partial and incomplete redevelopment could exacerbate the blight and leave the area in a state of disarray. *Id.* Therefore,

[t]he legislating authority must be aware of these problems and in assessing the merits of a proposed redevelopment plan must have before it information to determine the availability of adequate methods of financing to complete the project. To approve a redevelopment plan without such information would be arbitrary. This is why the enabling ordinance [Section 29.080] requires the "detailed statement of the proposed method of financing the redevelopment."

*Devanssay*, 622 S.W.2d at 326.

■ In the present case, MPRC's 1980 plan substantially complied with Section 29.080(15) and provided the Board of Aldermen with sufficiently detailed information to assess the redevelopment project's viability. MPRC's plan established (1) the program's anticipated costs; (2) MPRC's

capitalization; (3) its financing needs; (4) its current borrowings; (5) the past pledges of its shareholders of $500,000 to cover administrative costs; (6) Messrs. Cervantes and Koplar's intent to personally guarantee the loans necessary to complete the project; and (7) Hamiltonian Federal Savings and Loan Association's agreement to assume leadership in obtaining the participation of a consortium of lending institutions.

Moreover, the Board of Aldermen possessed additional information to aid its determination. The Board had access to (1) the Community Development Agency's report and recommendation that MPRC remain the redeveloper of Maryland Plaza; (2) MPRC's financial statements from 1976 to 1980; (3) the City's agreement to grant a tax abatement to the blighted area; (4) information that certain property owners had agreed to develop their own properties; (5) letters from Hamiltonian Federal and Lindell Trust Company expressing their continued interest in the project; and (6) a letter from Hamiltonian Federal stating its satisfaction with the project's financial viability based upon the personal guarantees of Messrs. Cervantes and Koplar.

Although reasonable persons might differ as to the adequacy of MPRC's proposed method of financing, it is clear that the Board of Aldermen possessed sufficiently detailed information to assess the redevelopment project's viability. From the evidence before the Board of Aldermen, we must conclude that the proposed method of financing Maryland Plaza's redevelopment was at least fairly debatable and the passage of Ordinance No. 58197 was not arbitrary.

In this argument challenging the validity of Ordinance No. 58197, appellants also contend MPRC's financial base may not be adequate to fund a jury award that may be rendered in a future condemnation action for the taking of their property. We find this argument without merit.

In a condemnation action, the court first appoints three disinterested commissioners who assess the damages that the condemnee will sustain by the appropriation of his property. RSMo § 523.040 (1978). If the condemnee takes exception to the commissioners' damage award, the court then orders a jury trial on the issue of damages. *Washington University Medical Center Redevelopment Corporation v. Komen*, 637 S.W.2d 51, 54 (Mo.App.1982). At trial, the measure of damages is the fair market value of the condemned property. MAI 9.01.

■ The above two-step procedure assures the condemnee that he will receive the just compensation to which he is entitled under the Missouri Constitution. Moreover, "[s]hould the title have passed and the required judgment payment not be made, then the landowner has the right to have both the title revested and damages awarded for the trespassory taking." 6A Nicholl's Law of Eminent Domain § 28.1 (3d ed. 1981).

Appellants last argue under Ordinance No. 58197 that any obligations of MPRC are illusory because the obligations are contingent upon MPRC obtaining acceptable financing for the project. Paragraph 22 of the ordinance provides that:

> The obligation or liability of the Developer, and any successors in interest to the property, under this Agreement shall be contingent upon the availability to the Developer, and any successors in interest to the property, of first mortgage financing for the project in such amount and at such interest rate and upon such other terms, provisions, and conditions as are acceptable to the Developer or any successors in interest to the property.

Appellants contend this provision makes the redevelopment agreement between MPRC and the City of St. Louis invalid and unenforceable because there was no mutuality of obligation between the parties. They argue that this provision in the ordinance permits MPRC to terminate the agreement and abandon the redevelopment project at will. We disagree.

■ The redevelopment agreement between MPRC and the City of St. Louis which is embodied in Ordinance No. 58197

is no different from any other contract. It is measured by the same tests and subject to the same rights and liabilities. *Burger v. City of Springfield*, 323 S.W.2d 777, 783 (Mo.1959); RSMo § 432.070 (1978). We must construe it as a whole. *Butler v. Centerre Trust Company*, 656 S.W.2d 831, 834 (Mo.App.1983). Seeming contradictions must be harmonized away if possible. *State Mutual Life Assurance Company of Worchester, Massachusetts v. Dischinger*, 263 S.W.2d 394, 401 (Mo.1953). Further, where a party challenges a contract as unilateral, we must favor a construction that will make it valid. *National Refining Company v. Cox*, 227 Mo.App. 778, 57 S.W.2d 778, 781 (1933).

In the present case, Paragraph 22 is no different from a contract for the sale of real property containing a clause making the contract conditional upon the buyer obtaining a loan. Such a clause does not render the contract unenforceable for want of mutuality as long as the material terms are spelled out. *Solberg v. Kane*, 536 S.W.2d 885, 887 (Mo.App.1976).

Moreover, appellants focus only on the provisions of Paragraph 22 without reference to the remainder of the redevelopment agreement. Paragraph 2 sets forth MPRC's proposed redevelopment activities. Paragraph 4 establishes procedures in the event MPRC fails to timely perform under the agreement with the right to cancel reserved by the City in the event of default. Paragraph 17 requires MPRC to file performance and construction bonds for each stage of the development. The agreement also requires MPRC to pay liquidated damages if it fails to timely complete the redevelopment project. We note that at the time the Board of Alderman passed Ordinance No. 58197 in 1980, MPRC already had begun acquiring property and had obtained part of the financing necessary to complete the project. The redevelopment agreement was in fact part performed.

In summary, we affirm the judgment of the trial court validating City of St. Louis Ordinance No. 58197. We conclude that the ordinance is not invalid for granting MPRC the power of eminent domain to take appellants' property. MPRC's use of such power serves the public purpose of redeveloping and rehabilitating the Maryland Plaza neighborhood. We also hold that Ordinance No. 58197 is valid because the redevelopment plan it incorporated contained a sufficiently detailed statement of financing. Finally, we conclude that the redevelopment agreement between the City of St. Louis and MPRC as set forth in Ordinance No. 58197 creates a valid and enforceable contract. The agreement is not void for lack of mutuality of obligation.

Affirmed.

CRIST, P.J., and SIMON, J., concur.